COMMONWEALTH of Pennsylvania,
Appellee

v.

Stephen Christopher BOWEN,
III, Appellant.

Superior Court of Pennsylvania.

Submitted June 25, 2012.

Filed Nov. 1, 2012.

Lori A. Yost, York, for appellant.

James E. Zamkotowicz, Assistant District Attorney, York, for Commonwealth, appellee.

BEFORE: MUSMANNO, OLSON and FITZGERALD,* JJ.

* Former Justice specially assigned to the Supe-

OPINION BY OLSON, J.:

Appellant, Stephen Christopher Bowen, III, appeals from the judgment of sentence entered June 1, 2011, as made final by the denial of his post-sentence motions, sentencing him to an aggregate term of six and one-half to 15 years' incarceration for convictions of fleeing and attempting to elude police, possession of a controlled substance, possession of drug paraphernalia, and driving under the influence ("DUI"). For the following reasons, we affirm.

The trial court summarized the relevant factual and procedural background of this matter as follows:

Karen Lee Todesco Dickey ("Dickey") testified that on February 28, 2010, she was staying at a hotel with her son near Shrewsbury, Pennsylvania. N.T. Trial, 4/4/11–4/5/11 at 41. She left with her son at approximately 6:00 or 7:00 in the evening, after dark, to go to Blockbuster Video. *Id.* at 45, 49. As she exited the hotel parking lot, she noticed a vehicle following her. *Id.* at 42. Dickey continued to Interstate 83 and the car continued to follow. *Id.* The vehicle was following so closely behind her she reached speeds of 90 miles per hour to try to prevent being hit. *Id.* at 42–43. When Dickey exited 83 at Shrewsbury, she pulled behind a snow bank in the Walmart parking lot in attempt to hide from the vehicle. *Id.* at 44. She identified the vehicle as a dark gray Sebring and estimated that the drive from the hotel to the parking lot took 15 minutes. *Id.* at 43.

Dickey remained parked behind the snow bank approximately five to eight minutes before she saw the car again. *Id.* at 44. She was able to see it directly in front of her in a well-lit area and

rior Court.

determined a man was driving; she could not identify him as Appellant. *Id.* at 45. The man she saw driving did not exit his car, but screamed at her and her son, made obscene gestures and appeared to be angry. *Id.* at 45. While sitting in her car, she called 911 and provided the dispatcher with his license plate information. *Id.* at 47. She watched the Sebring drive away and never saw it again after that night. *Id.*

Trooper Roberson of the Pennsylvania State Police ("PSP") was on patrol near Interstate 83 in a marked unit and in uniform on February 28, 2010. *Id.* at 64. Trooper Roberson met Dickey at a McDonald's near the Wal–Mart after she called to report the incident. *Id.* at 65. Dickey told the trooper that someone was following her, flashing high beams and following too closely, and that she was afraid. *Id.* at 66. After obtaining a verbal statement and a description of the vehicle and the driver, Trooper Roberson checked the Wal–Mart parking area for the suspect vehicle. *Id.* at 69. When he located a vehicle matching her description, Trooper Roberson activated his lights and sirens and slowly pulled up behind. *Id.* The reason for the stop was possible harassment of Ms. Dickey. *Id.* at 95. Appellant applied his brakes, drifted downhill toward a four-way intersection, and turned onto Interstate 83 without stopping. *Id.* at 69. Once on the interstate, Appellant accelerated and began driving erratically to flee from the trooper. *Id.* at 70. The trooper's lights and sirens remained activated and alternating in various visual and audio signals. *Id.* Appellant was driving [at] speeds between 50 to 100 miles per hour. *Id.* at 72, 130. They continued south and exited the Interstate in Pennsylvania, and then proceeded into Maryland. *Id.* at 73. At this time other PSP units joined in the pursuit. *Id.*

Trooper Roberson never lost sight of Appellant's vehicle during what he estimated to be at least 30 minutes. *Id.* at 73, 130. Eventually spike strips were deployed to stop Appellant's vehicle. *Id.* at 76. After Appellant drove over the spike strips, Trooper Roberson attempted to pass his vehicle. While doing so, Appellant swerved toward him as if trying to hit him. *Id.* at 78, 85. The trooper was able to avoid being hit and moved ahead to block Appellant's vehicle. *Id.*

Trooper Roberson exited and approached the passenger side of the vehicle with his firearm drawn. *Id.* at 86. Trooper Burnham approached on the driver's side. *Id.* at 87. Trooper Roberson broke the passenger's side window to remove Appellant when he saw him making movements to get away from Trooper Burnham. *Id.* at 88. Appellant resisted the troopers' efforts to remove him from the vehicle. *Id.* at 89. Once out of the car, Appellant ignored commands to show his hands and continued to resist on the ground. *Id.* at 90–93. Appellant was kicking and flailing his arms aggressively while trying to get away. *Id.* Trooper Roberson used hand strikes on his back and arms to try to gain compliance. *Id.* at 90. Trooper Roberson testified that he did not see a taser being used. *Id.* at 113. He also did not see anyone strike Appellant in the face. *Id.* at 118.

Trooper Burnham was also on patrol traveling southbound on Interstate 83 at the time of the pursuit. *Id.* at 133. He heard the PSP radio transmission and caught up to Trooper Roberson's vehicle in Maryland. *Id.* at 135. Trooper Burnham recalled traveling [at] speeds of 70 to 75 miles per hour after he joined the chase behind Trooper Roberson. *Id.* With respect to Appellant's driving, he said he would slow down but then

speed back up and drive into oncoming traffic. At one point while still in Maryland, Trooper Roberson attempted to pass Appellant's vehicle to try to stop him. *Id.* at 136. Appellant made a quick turn and travelled back into Pennsylvania. *Id.*

When the stop spikes were deployed into the roadway, all three vehicles drove over them. *Id.* at 137. At that time, Trooper Burnham saw Trooper Roberson attempt to pass Appellant and Appellant tried to aggressively swerve toward him as he did so. *Id.* at 137–138. Trooper Burnham described the pit maneuver he used to force Appellant's vehicle to stop by pushing the front of his cruiser into the back of Appellant's vehicle to spin it out. *Id.* at 139. He explained that he felt Trooper Roberson's life was in jeopardy and that PSP troopers are permitted to use this maneuver when deadly force is authorized. *Id.*

As Trooper Burnham exited his vehicle he drew his firearm because he did not know if Appellant had a weapon or why he was fleeing. *Id.* at 141. When he first ran to the vehicle, he attempted to open the door but it was locked. *Id.* at 143. He used his baton to break the window out and smelled the odor of alcoholic beverage emanating from the interior of the car. *Id.* at 144. Appellant moved toward the passenger's side door, away from Trooper Burnham, and ignored repeated commands to show his hands. *Id.* at 145. The trooper used his taser as the next level of force before physically attempting to take control of him. *Id.* at 146, 172. Appellant continued to resist after being struck by the taser and kicked Trooper Burnham in the face. *Id.* at 148. Trooper Burnham ran to the passenger side and both he and Trooper Roberson dragged Appellant out of the vehicle. Trooper Burnham used his taser a second time and used his baton to gain control of Appel-

lant. *Id.* at 150–151. The entire incident from the time the vehicle stopped to when Appellant was handcuffed took less than one minute. *Id.* at 181.

While Appellant was still in custody, Trooper Burnham looked in the window of [Appellant's] car and saw drug paraphernalia, syringe caps and drug packaging, in plain view on the floorboard. *Id.* at 188–189. Two days later, Trooper Colarusso obtained consent to search the car from its owner, Appellant's girlfriend, at the garage where it was being stored. *Id.* at 203. It was at that time Troopers Colarusso and Nevitsky searched the interior and seized the drug paraphernalia. *Id.* at 204–205. A metal spoon was sent to the PSP laboratory for testing and it contained cocaine residue. *Id.* at 211. An empty bottle of champagne was also on the floorboard of the car. *Id.* at 215. Appellant's blood was drawn at York Hospital following his arrest. *Id.* at 199. The toxicology report indicated that his blood alcohol content was .038 percent and he had measurable amounts of cocaine and methadone in his blood within two hours of the stop. *Id.* at 215.

Appellant's girlfriend, Heather Fowler ("Fowler") testified for the defense. She was the owner of the 1998 Chrysler Sebring that Appellant was driving on February 28, 2010. *Id.* at 223–223. Fowler said that during the pursuit Appellant called her, frantic, and said he was being chased by the police. *Id.* He told her he was afraid to pull over because he had a paintball gun in the car. *Id.* Appellant begged her to call 911 to advise that he had the gun and that he would voluntarily stop. *Id.* When they hung up, Fowler called 911 and informed the Pennsylvania dispatcher that Appellant had a paintball gun. *Id.* at 227. Trooper Colarusso clarified that the call from Fowler regarding the paintball gun

came in after Appellant's vehicle was stopped by the spike strips. *Id.* at 246.

Appellant testified that on February 28, 2010, Fowler was at his house packing up her things and moving out after they broke up. *Id.* at 253. He said that he drove around most of the day and used drugs. *Id.* at 254. He ingested methadone that day at a clinic for heroin addiction. *Id.* at 254. Appellant also smoked cocaine using the glass pipes that the police recovered from the car. *Id.* at 255. He consumed alcohol while he was fleeing the police. *Id.* at 255.

Appellant was driving around and pulled into what he believed to be an empty parking lot. *Id.* at 258. He wanted to be by himself to think and cry. *Id.* at 258. He saw another car in the lot and he thought there were two men in the car drinking beer from a can. *Id.* Appellant saw the car leave the parking lot five or six minutes after he pulled in and parked. *Id.* at 259. He turned his vehicle to leave the parking lot and saw the other car again near the hotel driveway and the main road. *Id.* Appellant said he was intoxicated.

Appellant followed Dickey onto the entry ramp of Interstate 83. *Id.* at 260. He followed behind her because she was speeding and he also wanted to speed. *Id.* at 260. Appellant denied following too closely or cutting her off. *Id.* at 261. He then followed her off the exit toward his house. *Id.* After Appellant proceeded through the intersection, he believed the other car was following him into the parking lot. *Id.* Appellant turned into the parking lot to park his car and sit and he was not paying attention to the other driver. *Id.* at 262.

As Appellant pulled out of the Wal–Mart parking lot, [he] noticed a police vehicle quickly approaching with its emergency lights activated. *Id.* at 263. Appellant did not believe he was being pulled over so [he] made a turn and continued to drive. Appellant proceeded to a red traffic light and made another turn, because there was nowhere to pull over to move out of the trooper's way. *Id.* at 264. The next place to turn was onto Interstate 83 and Appellant realized the trooper was "chasing" him. *Id.* Appellant had a paintball gun in the car that resembled a machine gun. He wanted to notify the police that he had the gun before he pulled over. *Id.* at 265.

Appellant said after the vehicles stopped he had his hands in the air. *Id.* at 175. His hands remained in the air as the police broke his windows. Id. He moved away so he wouldn't get hit and then was tased. *Id.* at 276. After he was pulled out of the car all he remembered was being stomped, kicked, and beaten. *Id.* at 281. He was kicked in the face and struck in the face by a metal baton. *Id.* Appellant denied resisting or showing any form of aggression toward the troopers during the entire incident. *Id.* at 285.

Appellant was found guilty of fleeing or attempting to elude police and he pled guilty to driving under the influence of a controlled substance.

Trial Court Opinion, 12/12/2011, at 1–7. The trial court sentenced Appellant on June 1, 2011. He thereafter filed post-sentence motions, which the trial court denied on September 19, 2011. This timely appeal followed.[1]

Appellant presents three issues for appeal:

---

**1.** The requirements of Pennsylvania Rule of Appellate Procedure 1925 have been satisfied in this matter.

Whether the verdict in this matter was contrary to the weight and/or sufficiency of the evidence produced at trial?

Whether the trial court abused its discretion in sentencing the Appellant to an aggregate term of six and one-half (6½) to fifteen (15) years['] incarceration in a state correctional institution?

Whether the trial court's imposed sentence for [f]leeing or [a]ttempting to [e]lude a [p]olice [o]fficer was illegal in that [it] exceeded the maximum term for second or subsequent convictions for this offense as provided by statute?

Appellant's Brief at 4.[2]

 Appellant's first issue on appeal asserts that the verdict was contrary to both the weight and sufficiency of the evidence. With regard to Appellant's sufficiency claim, Appellant claims that the Commonwealth presented insufficient evidence to sustain his conviction of fleeing or attempting to elude police. Appellant's Brief at 13–17. We address such challenges under a well-established standard of review:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the factfinder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by a fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of

fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Muniz*, 5 A.3d 345, 348 (Pa.Super.2010) (internal citations and quotations omitted), *appeal denied*, 610 Pa. 584, 19 A.3d 1050 (2011).

Appellant was convicted of the aggravated level of fleeing or attempting to elude police, 75 Pa.C.S.A. § 3733(a.2)(2), which is defined as follows:

> (a) **Offense defined.**—Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).
>
> (a.1) Disposition of fines, etc.—The fines imposed and collected under subsection (a) shall not be subject to 42 Pa.C.S. § 3733 (relating to deposits into account). The fines imposed and collected under subsection (a) shall be distributed in the manner provided in 42 Pa.C.S. § 3571(b)(2) and (3) (relating to Commonwealth portion of fines, etc.).
>
> (a.2) **Grading.**—
>
> . . .

---

**2.** We have reordered the presentation of Appellant's issues on appeal for ease of disposition.

(2) An offense under subsection (a) constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following:

(i) commits a violation of section 3802 (relating to driving under influence of alcohol or controlled substance);

(ii) crosses a State line; or

(iii) endangers a law enforcement officer or member of the general public due to the driver engaging in a high-speed chase.

**(b) Signal by police officer.**—The signal given by the police officer may be by hand, voice, emergency lights or siren.

**(c) Defenses.—**

(1) It is a defense to a prosecution under this section that the pursuing police officer's vehicle was not clearly identifiable by its markings or, if unmarked, was not occupied by a police officer who was in uniform and displaying a badge or other sign of authority.

(2) It is a defense to prosecution under this section if the defendant can show by a preponderance of the evidence that the failure to stop immediately for a police officer's vehicle was based upon a good faith concern for personal safety. In determining whether the defendant has met this burden, the court may consider the following factors:

(i) The time and location of the event.

(ii) The type of police vehicle used by the police officer.

(iii) The defendant's conduct while being followed by the police officer.

(iv) Whether the defendant stopped at the first available reasonably lighted or populated area.

(v) Any other factor considered relevant by the court.

75 Pa.C.S.A. § 3733, *subsequently amended* 2012 Pa.Legis.Serv.Act.2012–93 (H.B. 208).

Based upon the certified record before us, we agree with the trial court that the Commonwealth provided ample evidence to support Appellant's conviction of Section 3733(a.2)(2). Indeed, testimony from State Troopers Roberson and Burnham established that Appellant refused to stop when he knew that police were giving him both visual and audible signs to pull over. Furthermore, testimony from the troopers established that the pursuit lasted approximately 30 minutes and crossed the state line into Maryland. Testimony also established that during the pursuit, Appellant erratically drove at speeds reaching between 70 and 100 miles per hour, endangering other traffic on the roads. Once finally detained, Appellant was charged and convicted of, *inter alia*, DUI.

Appellant, however, acknowledges all of the evidence set forth above, but argues that the Commonwealth insufficiently disproved his affirmative defense to the fleeing or attempting to elude police charge. Appellant's Brief at 13–17. According to Appellant, he failed to stop based upon a good faith concern for his personal safety. *Id.* at 14. Appellant contends that, at trial, he explained to the jury that he had a paintball gun in the car and was concerned that, if pulled over, the police would mistake the gun for a real rifle, and then shoot him. *Id.* at 14–15. Instead of stopping, Appellant claims that he attempted to call 911 to explain the situation to dispatch, and that he called his girlfriend to ask her to do the same. *Id.* at 15–16. Therefore, Appellant argues that, pursuant to the defenses set forth at Section 3733(c), he carried his burden by demonstrating that his failure to stop was based upon a

good faith concern for his personal safety. *Id.* at 16–17.

Appellant's contention, however, does not challenge the sufficiency of the evidence, but rather its weight. That Appellant failed to stop when signaled by police is undisputed. Rather, Appellant challenges the jury's determination not to accept his explanation of the events, and therefore his affirmative defense. Such credibility determinations, however, go to the weight, not the sufficiency of the evidence. *See Commonwealth v. W.H.M.,* 932 A.2d 155, 160 (Pa.Super.2007) (claim that the jury should have believed Appellant's version of the event rather than that of the victim goes to the weight, not the sufficiency of the evidence). Consequently, Appellant's challenge to the sufficiency of the evidence for that conviction is without merit.

 With regard to Appellant's weight of the evidence claim:

When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. *Commonwealth v. Rossetti,* 863 A.2d 1185, 1191 (Pa.Super.2004) (citation omitted). "Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Champney,* 574 Pa. 435, 832 A.2d 403, 408 (2003). "Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.*

*Commonwealth v. Trippett,* 932 A.2d 188, 198 (Pa.Super.2007) (parallel citations omitted).

As set forth above, Appellant's weight of the evidence argument alleges that he sufficiently established that he failed to stop when pursued by police because he had a good faith concern for his personal safety. Appellant's Brief at 16–17. Therefore, according to Appellant, the verdict was against the weight of the evidence in that he demonstrated his entitlement to the affirmative defense set forth at Section 3733(c). *Id.* at 17.

The trial court considered Appellant's weight of the evidence claim in resolving Appellant's post-trial motion, and deemed the claim to lack merit. We agree. The jury's choice not to believe Appellant's version of the events was purely within its discretion and will not be disturbed on appeal. *See W.H.M.,* 932 A.2d at 160. Indeed, considering the voluminous evidence presented against Appellant at trial, we agree with the trial court that the verdict in this matter does not shock one's sense of justice. Therefore, we hold that Appellant's weight of the evidence claim is without merit.

 Appellant's second issue on appeal challenges the discretionary aspects of his sentence, arguing that the sentence in this matter was too harsh, especially considering Appellant's acceptance of responsibility, his expression of remorse, and his amenability to rehabilitation. Appellant's Brief at 10.

A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute. Two requirements must be met before we will review this challenge on its merits. First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance

of appeal with respect to the discretionary aspects of a sentence. Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. In order to establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.

*Commonwealth v. McAfee,* 849 A.2d 270, 274 (Pa.Super.2004) (internal citations omitted).

In the present case, Appellant's brief contains a concise statement that is in technical compliance with the above requirement. Appellant's Brief at 10. Moreover, Appellant asserts that in setting Appellant's sentence (in particular, his sentence for fleeing or attempting to allude police which was outside of the guideline range), the trial court ignored Appellant's acceptance of responsibility, expression of remorse, and amenability to rehabilitation. *Id.* Consequently, Appellant alleges that the sentence imposed by the trial court failed to achieve individualized justice and instead imposed an unduly harsh aggregate sentence. *Id.* We have held that a substantial question is raised where an appellant alleges the sentencing court erred by imposing an ag-

gravated range sentence without consideration of mitigating circumstances. *Commonwealth v. Felmlee,* 828 A.2d 1105, 1107 (Pa.Super.2003) (*en banc*). Thus, we will address the merits of Appellant's challenge to discretionary aspects of his sentence.[3]

 Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Cunningham,* 805 A.2d 566, 575 (Pa.Super.2002) (citations omitted). More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

In every case where a sentencing court imposes a sentence outside of the sentenc-

---

**3.** Initially, however, we note that Appellant's argument in support of his discretionary sentencing claim cites case law setting forth our standard of review, but fails to cite a single case supporting his individual argument. Appellant's Brief at 17–22. Pursuant to the Pennsylvania Rules of Appellate Procedure, failure to cite to relevant authority provides a basis for us to find waiver. *See* Pa.R.A.P. 2119; *Commonwealth v. Einhorn,* 911 A.2d 960, 970 (Pa.Super.2006) (holding that appellant's failure to properly develop claims in

brief rendered the claims waived); *Commonwealth v. Drake,* 452 Pa.Super. 315, 681 A.2d 1357, 1360 (1996) (explaining that this Court will not become the counsel for an appellant, "and will not, therefore, consider issues … which are not fully developed in [the] brief[ ]") (citation omitted). Nevertheless, considering that the trial court addressed Appellant's discretionary sentencing claim in its well-reasoned Rule 1925 opinion, we consider the merits of Appellant's claim.

ing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence. 42 Pa.C.S.A. § 9721; *see also Commonwealth v. Eby,* 784 A.2d 204, 205–206 (Pa.Super.2001).

> The statute requires a trial judge who intends to sentence a defendant outside of the guidelines to demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as [it] also states of record the factual basis and specific reasons which compelled [it] to deviate from the guideline range.

*Commonwealth v. Gibson,* 716 A.2d 1275, 1276–1277 (Pa.Super.1998) (internal quotations omitted).

 When evaluating a challenge to the discretionary aspects of sentence such as the one advanced by Appellant, it is important to remember that the sentencing guidelines are advisory in nature. *Id.* at 1277. If the sentencing court deems it appropriate to sentence outside of the guidelines, it may do so as long as it offers reasons for this determination. *Id.* "[O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is *not un* reasonable, we must affirm a sentence that falls outside those guidelines." *Id.* (citations omitted, emphasis in original).

Appellant alleges that in setting his sentence, the trial court ignored Appellant's acceptance of responsibility, expression of remorse, and amenability to treatment, and instead focused on Appellant's prior criminal record and periodic incarceration. Appellant's Brief at 20. According to Appellant, the trial court's "talismanic use of the terms 'poor candidate for rehabilitation' and 'danger to the community' was not supported by the evidence" in addition to ways already considered within the guidelines. *Id.* at 21–22. Furthermore, Appellant contends that the trial court "dismissed" Appellant's explanation of his "struggles" with substance abuse, despite the fact that they were supported by expert testimony. *Id.* at 22. Consequently, Appellant argues that the sentence in this matter was an "unfair application" in violation of Appellant's right to "individualized justice." *Id.*

We disagree with Appellant's assessment of the sentencing proceedings. To the contrary, at the sentencing hearing, the trial court listened to Appellant's proclamation of his desire to lead a law-abiding life. N.T., 6/1/2011, at 10. However, the trial court balanced the credibility of that proclamation against Appellant's long criminal history. *Id.* Sorting out that history, the trial court spent a great deal of time confirming the accuracy of the presentence report, which detailed Appellant's multiple convictions for offenses such as drug use, receiving stolen property, several DUIs, and escape. *Id.* at 4–11. In addition to the presentence report, and Appellant's statement at the sentencing hearing, the trial court stated that it considered the letters submitted on Appellant's behalf and the videotape of the events that was taken by the police in this case, placing additional emphasis on the danger to police and the general public created by Appellant's actions in this matter. *Id.* at 8–11. Considering all of this evidence, including Appellant's prior record, his potential for violence, his multiple DUIs, and the danger that he created in the events leading to his conviction, the trial court determined that Appellant is a

poor candidate for rehabilitation and that a sentence that exceeded the guidelines was justified. *Id.*

Therefore, upon review of the record, we conclude that the trial court properly articulated the nature and circumstances of the offense, as well as Appellant's history and personal characteristics, when it imposed a sentence in excess of the guideline range. Thus, the trial court did not abuse its discretion and Appellant is not entitled to relief based on his challenge to the discretionary aspects of his sentence.

■ Furthermore, to the extent that Appellant argues that the trial court abused its discretion by running Appellant's sentences consecutively rather than concurrently (Appellant's Brief at 22), such argument lacks merit. Indeed, under Pennsylvania law, it is well accepted that "[i]n imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed." *Commonwealth v. Wright,* 832 A.2d 1104, 1107 (Pa.Super.2003), *citing Commonwealth v. Rickabaugh,* 706 A.2d 826 (Pa.Super.1997). In this matter, the record establishes that the trial court adequately explained and justified its reasons for the substantial sentence issued to Appellant. Therefore, we hold that the sentence issued to Appellant, though harsh, was not an abuse of discretion.

■ Appellant's final issue on appeal challenges the legality of his sentence.[4] Issues relating to the legality of a sentence are questions of law to which our standard of review is *de novo* and our scope of review is plenary. *Common-*

wealth v. *Leverette,* 911 A.2d 998, 1002 (Pa.Super.2006). The Pennsylvania Supreme Court has stated that an illegal sentence is one that exceeds the statutory maximum. *See Commonwealth v. Bradley,* 575 Pa. 141, 834 A.2d 1127, 1131 (2003). Furthermore:

"[u]nder Pennsylvania law, a challenge to the validity of a sentence is a challenge to its legality." *Commonwealth v. Arest,* 734 A.2d 910, 912 n. 2 (Pa.Super.1999). "If a court does not possess statutory authorization to impose a particular sentence, then the sentence is illegal and must be vacated." *Id.* (citation omitted). *See also [Commonwealth v.] Robinson,* 931 A.2d [15], 21 [ (Pa.Super.2007) ] (an illegal sentencing claim is one which implicates "the fundamental legal authority of the court to impose the sentence it did."); *Commonwealth v. Pinko,* 811 A.2d 576, 577 (Pa.Super.2002) ("The matter of whether the trial court possesses the authority to impose a particular sentence is a matter of legality.").

*Commonwealth v. Wilson,* 11 A.3d 519, 524 (Pa.Super.2010) *(en banc ) (plurality ).*

■ In this matter, Appellant's illegality of sentencing claim challenges the sentence imposed for his conviction of fleeing or attempting to elude a police officer, 75 Pa.C.S.A. § 3733(a.2)(2). Pennsylvania law grades that conviction as a felony of the third degree. *Id.* Specifically, pursuant to Section § 3733:

(a) **Offense defined.**—Any driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude

4. We note that Appellant did not set forth his illegality of sentencing issue within his Rule 1925 statement. Generally, issues omitted from a Rule 1925 statement are waived on appeal. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998); Pa.R.A.P.

1925. However, illegality of sentence is a non-waivable issue that is subject to our *sua sponte* review. *See, e.g., Commonwealth v. Randal,* 837 A.2d 1211, 1214 (Pa.Super.2003) *(en banc ).* Therefore, we consider Appellant's issue.

a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2).

. . .

**(a.2) Grading.—**

(1) Except as provided in paragraph (2), an offense under subsection (a) constitutes a misdemeanor of the second degree. Any driver upon conviction shall pay an additional fine of $500. This fine shall be in addition to and not in lieu of all other fines, court expenses, jail sentences or penalties.

(2) **An offense under subsection (a) constitutes a felony of the third degree if the driver while fleeing or attempting to elude a police officer does any of the following:**

(i) commits a violation of section 3802 (relating to driving under influence of alcohol or controlled substance);

(ii) crosses a State line; or

(iii) endangers a law enforcement officer or member of the general public due to the driver engaging in a highspeed chase.

75 Pa.C.S.A. § 3733 (emphasis added).

Typically, persons convicted of felonies of the third degree may be sentenced up to seven years' incarceration. 18 Pa.C.S.A. § 1103.[5] Accordingly, the trial court sentenced Appellant to 42 to 84 months' incarceration for that conviction.

Significantly, however, this was Appellant's second conviction under Section 3733. Pursuant to 75 Pa.C.S.A. § 6503, persons convicted of a second or subsequent violation of Section 3733 may be sentenced, *inter alia*, to not more than six months' incarceration. Specifically, Section 6503(a) states as follows:

(a) **General offenses.**—Every person convicted of a second or subsequent violation of any of the following provisions shall be sentenced to pay a fine of not less than $200 nor more than $1,000 or to imprisonment for not more than six months, or both:

Section 1543(a) (relating to driving while operating privilege is suspended or revoked) except as set forth in subsection (a.1).

Section 3367 (relating to racing on highways).

**Section 3733 (relating to fleeing or attempting to elude police officer).**

Section 3734 (relating to driving without lights to avoid identification or arrest).

Section 3748 (relating to false reports).

75 Pa.C.S.A. § 6503(a) (emphasis added).

Therefore, Appellant argues that there is a conflict between his Section 3733 offense, graded as a felony of the third degree and therefore subject to a sentence of up to seven years' incarceration, and Section 6503, which limits sentences for second or subsequent violations of Section 3733 to no more than six months' incarceration. Appellant's Brief at 11–13. Relying upon our decision in *Commonwealth v. Ruffin*, 16 A.3d 537 (Pa.Super.2011), Appellant argues that application of principles of statutory construction guide that Section 6503, as the more specific provision among the two in conflict, should prevail. *Id.* Therefore, applying Section 6503

---

**5.** Section 1103 states as follows:

Except as provided in 42 Pa.C.S. § 9714 (relating to sentences for second and subsequent offenses), a person who has been convicted of a felony may be sentenced to imprisonment as follows:

. . .

(3) In the case of a felony of the **third degree,** for a term which shall be fixed by the court at **not more than seven years.**

18 Pa.C.S.A. § 1103 (emphasis added).

and *Ruffin* to this matter, Appellant argues that his sentence of 42 to 84 months is illegal. *Id.*

We agree with Appellant that there is indeed an irreconcilable conflict between Section 6503 and Section 3733. We, however, disagree that, under these circumstances, application of principles of statutory construction results in Section 6503 prevailing among that conflict. To the contrary, for the reasons set forth below, the facts and circumstances of this matter are distinguishable from *Ruffin*, and application of principles of statutory construction in this matter result in Section 3733 prevailing. Therefore, we hold that Appellant's sentence is legal.

> Specifically, in *Ruffin* we explained that: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a); *Commonwealth v. Cox*, 603 Pa. 223, 983 A.2d 666, 703 (2009). "In general, the best indication of legislative intent is the plain language of the statute." *Commonwealth v. Segida*, 604 Pa. 103, 985 A.2d 871, 874 (2009); *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127, 1132 (2003). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). It is only when the words of a statute are ambiguous that we may attempt to ascertain the legislature's intent by considering the factors set forth in 1 Pa.C.S.A. § 1921(c)(1)-(8).[6] *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189 (2005). We presume that that legislature "intends the entire statute to be

effective and certain." 1 Pa.C.S.A. § 1922(2).

*Ruffin*, 16 A.3d at 540 (footnote in original, parallel citations omitted).

In *Ruffin*, the defendant had been convicted of fleeing or attempting to elude police under Section 3733(a.2)(1), which is graded as a misdemeanor of the second degree, punishable by a sentence of up to two years' incarceration. *Id.* at 538. Accordingly, the trial court sentenced the defendant in *Ruffin* to three to 12 months' house arrest, to be followed by probation. Significantly, like in this matter, that was the defendant's second offense under Section 3733. Therefore, on appeal, the defendant in *Ruffin* argued that application of Section 6503 rendered his aggregate sentence of up to 12 months' house arrest plus probation illegal. *Id.*

In resolving the appeal in *Ruffin*, we acknowledged that Section 3733 conflicts with Section 6503. *Id.* at 540. Therefore, to resolve the conflict, we applied the principle of statutory construction set forth at 1 Pa.C.S.A. § 1933. Pursuant to that rule of construction:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, **unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly**

**6.** Those factors are: (1) the occasion and necessity for the statute; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other statutes upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretation of such statute.

**that such general provision shall prevail.**

1 Pa.C.S.A. § 1933 (emphasis added).

Applying Section 1933, in *Ruffin* we explained that, pursuant to application of Pennsylvania law and precedent, Section 6503 is a specific provision and Section 3733 is a general provision.[7] Therefore, we examined the specific sub-section of Section 3733 under which the defendant was convicted to determine if the exception set forth in Section 1933 (emphasized above) applied in that matter. *Ruffin,* 16 A.3d at 541–542.

The first element of the Section 1933 exception considers whether the general provision was enacted later than the specific. 1 Pa.C.S.A. § 1933. In *Ruffin,* we explained that the General Assembly enacted both Section 3733(a.2)(1) and Section 6503 on June 17, 1976. *Id.* Therefore, we determined that the first prong of the exception set forth in Section 1933 did not apply. *Id.* at 542. Furthermore, we examined a detailed history of the interplay between Sections 3733(a.2)(1) and 6503, and determined that the General Assembly had "not shown its manifest intent for general provision 3733 to prevail over special provision 6503." *Id.* at 544. Therefore, we held that the second prong of the exception also failed. *Id.* Consequently, we held that, under the circumstances set forth in *Ruffin,* Section 6503 prevailed over Section 3733, and that the defendant's sentence in excess of six months was illegal. *Id.*

Appellant in this matter would have us apply the identical analysis used in *Ruffin* to conclude that his sentence in excess of six months' incarceration is similarly illegal. *See* Appellant's Brief at 12–13. Appellant, however, was convicted of a different subsection of Section 3733 than the defendant in *Ruffin*—Appellant was convicted of Section 3733(a.2)(2), a felony of the third degree, as compared to Ruffin's conviction of Section 3733(a.2)(1), a misdemeanor of the second degree. Therefore, while we apply the same analysis used in *Ruffin,* we do so with specific reference to Section 3733(a.2)(2).

We begin that analysis by determining whether Section 3733(a.2)(2) (the general provision) was enacted later than Section 6503 (the specific provision). As set forth above, Section 6503 was enacted in 1976. It was last amended in 2002. At both of those times Section 3733(a.2)(2) did not exist. Rather, in 2006 the General Assembly created a new, aggravated version of the offense set forth in Section 3733, which it defined at subsection 3733(a.2)(2). That new offense introduced additional elements which must be proven beyond a reasonable doubt and graded the offense as a felony, elevating the severity of the crime above the misdemeanor set forth at sub-section 3733(a.2)(1). Consequently, in this matter, unlike in *Ruffin,* the first element of the exception set forth at Section 1933 is met.

The second element of the exception considers whether the General Assembly has expressed its "manifest intention" for Section 3733(a.2)(2) to prevail. In *Ruffin,* we explained that, "manifest intent" is "intent that is 'apparent or obvious.'" *Id.* at 540, *quoting Black's Law Dictionary,* 7th ed.1990. The Commonwealth argues that the General Assembly expressed its manifest intent for Section 3733(a.2)(2) to prevail over Section 6503 by grading a violation of Section 3733(a.2)(2) as a third degree felony, and through the legislative history accompanying the passage of Section 3733(a.2)(2). We agree.

---

**7.** *See Ruffin,* 16 A.3d at 540 n. 8 ("Statutes designed to establish proper procedures for sentencing all defendants who commit crimes are general provisions." *quoting Commonwealth v. Klingensmith,* 437 Pa.Super. 453, 650 A.2d 444, 447 (1994)).

Specifically, the provision set forth at Section 3733(a.2)(2) is expressly graded as a felony of the third degree, which is recognized under the law as a more serious crime than a misdemeanor. Indeed, in Pennsylvania, felonies of the third degree are punishable by up to seven years' incarceration (18 Pa.C.S.A. § 1103(3)), whereas the maximum sentence for a misdemeanor of the second degree is up to two years' incarceration (18 Pa.C.S.A. § 1104(2)). Furthermore, because he was convicted of a felony, Appellant is prohibited from exercising certain rights and privileges, such as holding public office and receiving certain government benefits. Therefore, simply by grading Section 3733(a.2)(2) as a felony of the third degree, the General Assembly expressed its intent to subject violators of that section to a more serious sentence.

That intent is further emphasized by examination of the legislative history accompanying the passage of Section 3733(a.2)(2). Specifically, in their comments introducing Section 3733(a.2)(2) to the Pennsylvania Senate, the supporting senators stated as follows:

> Senator M.J. WHITE. Madam President, I apologize that my colleagues on the other side of the aisle did not have this amendment earlier. This is actually a rather simple amendment. The underlying offense in this bill refers to a driver of a motor vehicle who fails or refuses to stop when ordered to do so by a police officer. The existing amendment that was already there in the bill changes the grading of the offense.
>
> **I serve on the Pennsylvania Commission on Sentencing, and one of the complaints I get most frequently from judges and from law enforcement people is that the offense of a high-speed chase is undergraded. It is currently a misdemeanor with a $500 fine. My amendment is upgrading an aggravated offense of fleeing or not stopping for a police officer under two circumstances, when the driver is under the influence of drugs or alcohol, or crosses a State line. My amendment would add a third aggravating factor that would move this into the felony classification, and that is when the driver endangers a law enforcement officer or a member of the general public due to engaging in a high-speed chase. I am told that these chases are extremely dangerous to the public, and I think they should be graded well beyond a $500 fine.**
>
> Thank you.
>
> The PRESIDENT. The Chair recognizes the gentleman from Berks, Senator O'Pake.
>
> Senator O'PAKE. Madam President, would the gentlewoman consent to brief interrogation?
>
> The PRESIDENT. The gentlewoman indicates that she will.
>
> Senator O'PAKE. Madam President, under the gentlewoman's amendment, what would the penalty be?
>
> Senator M.J. WHITE. Madam President, well, it would be a felony of the third degree. I am afraid it has been a long time since I practiced criminal law, so I do not remember what the range of penalties is for that particular offense.
>
> Senator O'PAKE. **Madam President, counsel advises that in his opinion, the maximum would be up to 7 years in jail.**
>
> Senator M.J. WHITE. Madam President, the sentencing guidelines would apply to whatever the minimum and maximum are under criminal law for a felony of the third degree.

Pennsylvania Senate Journal, 2006 Reg. Sess. No. 46 (emphasis added).

Such statements further evidence to us that the General Assembly created Section 3733(a.2)(2) to add an aggravated offense

level to the crime of fleeing or attempting to elude police. Indeed, from the above excerpts, we know that the General Assembly was aware of the potential sentence accompanying the new crime and intended that sentence to apply to all violations of Section 3733(a.2)(2). Consequently, we hold that when, in 2006, the General Assembly codified and graded the offense set forth at Section 3733(a.2)(2), it manifestly intended to have that provision prevail over Section 6503.[8] Therefore, the second element of the exception set forth in Section 1933 is also met.

Consequently, in resolving the conflict between Section 6503 and Section 3733(a.2)(2), we hold that Section 3733(a.2)(2) prevails, and that the maximum sentence of six months' incarceration set forth at Section 6503 for a second or subsequent violation of Section 3733 does not apply to a second or subsequent violation of Section 3733(a.2)(2). We therefore conclude that Appellant's sentence is legal.

Judgment of sentence affirmed.

---

**8.** Further solidifying our confidence in the General Assembly's intent to exclude violations of Section 3733(a.2)(2) from the limitation set forth at Section 6503, we note that on July 5, 2012, the General Assembly passed Act No. 2012–93, which amended offenses and penalties for motor vehicle violations set forth in Title 75. Within that Act, the General Assembly eliminated **any** reference to Section 3733 in Section 6503. *See* 2012 Pa.Legis.Serv.Act.2012–93 (H.B.208). The new act takes effect 60 days from its passage. There-

fore, beginning 60 days from July 5, 2012, no second or subsequent violation of any subsection of Section 3733 (even the one considered in *Ruffin* ) will be limited to a six-month sentence.

Considering that Appellant was convicted and sentenced prior to the effective date of the new act, however, the amended law does not apply to this matter. *California Dept. of Corrections v. Morales,* 514 U.S. 499, 504–506, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).