J-S23036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| THOMAS WOOD | : | |
| Appellant | : | No. 1116 EDA 2017 |

Appeal from the PCRA Order March 24, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012382-2012

BEFORE:   SHOGAN, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                  **FILED JUNE 12, 2018**

Appellant, Thomas Wood, appeals from the order entered in the Court of Common Pleas of Philadelphia County dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court has previously summarized the pertinent facts of the case *sub judice*, as follows:

> On August 14, 2012, Sergeant Paul Perez was on duty as a Narcotics Strike Force surveillance officer [i]n the 2300 block of North Colorado Street in Philadelphia.  On the day in question Sergeant Perez was driving around looking for open-air drug sales. Sergeant Perez was an experienced narcotics officer who had made in excess of 50 arrests in that area and who had observed over a thousand [] open-air drug transaction[s].
>
> Sergeant Perez set up a plain clothes surveillance, along with Police Officer Floyd.  He immediately observed Appellant, engage in a brief conversation, and hand Appellant an undetermined amount of United States Currency (USC).  Appellant  removed a

_____
*   Former Justice specially assigned to the Superior Court.

small item from his left top pocket and handed it to the unknown male, who left the area. Sgt. Perez put out the unknown black male's description over the police surveillance band, but he was not stopped.

Appellant continued to stay in the area of 2300 North Colorado, and at about 12:50 pm he was approached by another black male who handed Appellant currency after a very brief conversation. Appellant again removed a small item from his left breast pocket and handed it to the unknown male, who left the area. Sgt. Perez again put out the unknown black male's description over the police surveillance band, but he was not located.

At approximately 1:00 pm, Appellant was approached by a black female who greeted and hugged him, then sat down on the steps next to Appellant. Sgt. Perez then broadcast Appellant's location and description to uniformed officers who converged on the area and Officer Lutz stopped Appellant. Officer Lutz recovered 10 blue Ziploc packets which tested positive for cocaine and $58 in USC.

. . .

Following the denial of Appellant's motion to suppress, Appellant proceeded to a non-jury trial. At the conclusion of the non-jury trial on April 8, 2014, Appellant was found guilty of the aforementioned crimes. On July 18, 2014, Appellant was sentenced to 30 to 60 months' imprisonment on the PWID conviction followed by a consecutive period of three years' probation. For sentencing purposes, the possession of a controlled substance merged with PWID.

[Filing no post-sentence motion,] Appellant filed a timely appeal on July 21, 2014.

*Commonwealth v. Wood*, No. 2108 EDA 2014, unpublished memorandum at *1 (Pa.Super. filed May 20, 2015). This Court affirmed Appellant's judgment of sentence on May 20, 2015, and Appellant did not filed a petition for allowance of appeal with the Pennsylvania Supreme Court.

On August 25, 2015, Appellant filed a *pro se* PCRA petition, his first. The PCRA court appointed counsel, who filed an amended petition on October 20, 2015. On September 19, 2016, the Commonwealth filed a motion to dismiss the petition, to which Appellant filed a counseled response on November 18, 2016. On March 24, 2017, the PCRA court granted the Commonwealth's motion to dismiss, and it dismissed Appellant's petition. This timely appeal followed.

Appellant presents the following question for our review:

> **DID THE PCRA COURT ERR WHEN IT DISMISSED [APPELLANT'S] PCRA PETITION SEEKING REINSTATEMENT OF HIS RIGHT TO PURSUE A POST-SENTENCE MOTION *NUNC PRO TUNC* (AND, IF NECESSARY, A DIRECT APPEAL *NUNC PRO TUNC*) WHERE THE EVIDENCE SET FORTH IN THE AMENDED PCRA PETITION FILED BY COUNSEL, PROPERLY VIEWED, DEMONSTRATED BY A PREPONDERANCE OF THE EVIDENCE THAT DEFENDANT INSTRUCTED PRIOR COUNSEL TO FILE A POST-SENTENCE MOTION (AND PURSUE A DIRECT APPEAL), BUT TRIAL COUNSEL FAILED TO FILE A POST-SENTENCE MOTION, AND WHERE THE EVIDENCE SET FORTH IN THE AMENDED PCRA PETITION FILED BY COUNSEL ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT: TRIAL COUNSEL HAD NO STRATEGIC REASON FOR FAILING TO FILE THE REQUESTED MOTION; AND, THERE IS A REASONABLE PROBABILITY THAT THE MOTION WOULD HAVE RESULTED IN A REDUCTION OF THE SENTENCE IMPOSED?**

Appellant's brief at 4.

Appellant's claim implicates our well-settled rules governing claims of ineffective assistance of counsel, which are as follows:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence

resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." *Commonwealth v. Colavita*, 993 A.2d 874, 886 (Pa. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). In Pennsylvania, we have refined the *Strickland* performance and prejudice test into a three-part inquiry. *See Commonwealth v. Pierce*, 527 A.2d 973, 975–77 (Pa. 1987). Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." *Commonwealth v. Simpson*, 66 A.3d 253, 260 (Pa. 2013).

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (internal citations modified). We need not analyze "the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the [*Pierce*] test, the court may proceed to that element first." *Commonwealth v. Lambert*, 797 A.2d 232, 243 n. 9 (Pa. 2001). To satisfy the prejudice prong of *Strickland*, a petitioner must plead and prove there is a reasonable probability that, but for counsel's performance, he would have prevailed on the appeal.

Here, after careful review of the record, we conclude Appellant has satisfied neither the arguable merit nor the prejudice prong of his ineffectiveness claim, for he has not demonstrated the court imposed an unreasonable sentence for which there existed the reasonable probability of

modification or vacation on post-sentence motion or direct appeal, respectively.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

Where a trial court imposes a sentence outside of the sentencing guidelines, 42 Pa.C.S. § 9721(b) requires the trial court to provide, in open court, a "contemporaneous statement of reasons in support of its sentence." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1264 (Pa. Super. 2012). To satisfy the requirements of Section 9721(b), the trial court must:

> demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

***Id.*** (brackets and citation omitted). ***See also Commonwealth v. Hunzer***, 868 A.2d 498, 514 (Pa. Super. 2005) (observing that the trial court's statement of reasons need not be "a detailed, highly technical statement.").

- 5 -

In addition, where the trial court has the benefit of a PSI, "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (discussing *Commonwealth v. Devers*, 546 A.2d 12, 18–19 (Pa. 1988)). Thus, if the sentencing court states that it considered the PSI, the court has properly explained the basis for the sentence that it imposed. *Ventura*, *supra* at 1135 (citation omitted).

Where the trial court deviates above the guidelines, this Court may only vacate and remand a case for resentencing if we first conclude that "the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3). A sentence is not unreasonable simply because the trial court deviates above the guidelines to impose the statutory maximum. *See*, *e.g.*, *Commonwealth v. Rossetti*, 863 A.2d 1185, 1194–95 (Pa. Super. 2004) (affirming a statutory maximum sentence imposed after the trial court considered and balanced all of the relevant mitigating and aggravating facts).

Here, the court acknowledged that it reviewed Appellant's PSI report, and it listened to both parties' sentence recommendations based on Appellant's history as described in the PSI. Specifically, Appellant asked for a "guideline range" sentence given the lack of violence involved in his commission of the present PWID offense, while the Commonwealth sought a "substantial [aggravated] sentence" of two and one-half to five years consistent with the Office of Probation's advisement that Appellant was at high

risk for future offenses and violating probation. This latter recommendation stemmed from Appellant's extensive history of parole/probation violations and acting violently toward staff and the general population during his stays in both juvenile detention and prison, despite repeated attempts to rehabilitate him. N.T. 7/18/14, at 8. This aspect of Appellant's record, moreover, did not factor into his prior record score.

The court sentenced Appellant in accordance with the Commonwealth's request of 30 to 60 months' incarceration, to be followed by three years' probation where Appellant is to "enroll in the educational program, receive vocational training, job training, seek and maintain employment, and anger management." N.T. at 13. When asked by Appellant how much time was left on his sentence, the court responded "Well, that depends on how much credit you have towards this offense. If you've been in 23 months and that is towards this offense, you have about seven more months." N.T. at 14. In response to Appellant's inquiry whether this was a state sentence, the court continued: "It is a state sentence. I don't know where you will go with only seven months left. But I figure that they will send you up state for whatever time you have left before you are eligible for parole." *Id*.

There is nothing in this record from which to conclude the court imposed an unreasonable sentence. The record shows the court considered all relevant aggravating and mitigating facts, including Appellant's extensive history of violent and noncompliant behavior while under detention, incarceration, and probation, and imposed a sentence consistent with the protection of the public

as advocated by both the Commonwealth and the Office of Probation in the PSI report. We, therefore, discern neither arguable merit to Appellant's ineffectiveness claim nor prejudice flowing from his not having filed a post-sentence motion or direct appeal raising a discretionary aspect claim.

We also reject Appellant's additional argument that the trial court relied on an impermissible factor to impose a 30-month minimum sentence, namely, to ensure he remained in prison for seven more months, as he had already served 23 months in pretrial detention and would have been eligible for immediate parole had he received a guideline sentence. Appellant infers the court's intent in this regard from the court's Pa.R.A.P. 1925(a) opinion, where the court indicates the sentence also contemplated Appellant's time served and the fact that he would be parole eligible in seven months. PCRA Court Opinion, at 5.

First, it is worth noting that a sentencing court's after-the-fact 1925(a) opinion offered in justification of the sentence imposed does not qualify as a Section 9721(b) contemporaneous written statement of the reasons supporting a departure sentence. **Commonwealth v. McIntosh**, 911 A.2d 513, 521 (Pa.Super. 2006), **appeal granted, decision aff'd in part, rev'd in part on other grounds**, 922 A.2d 873 (Pa. 2007). However, to the extent this Court has referred to Rule 1925(a) opinions as useful summaries of the reasons clearly relied upon at sentencing, we note in that vein the PCRA Court's Rule 1925(a) opinion, when read in its entirety, reflects the discussion

undertaken during the sentencing hearing regarding Appellant's history as a detainee, inmate, and probationer.

Specifically, the court's opinion explains:

At the time of sentencing the [trial court] heard arguments of counsel and Appellant's allocution. In imposing sentence, the court considered the pre-sentence report and the modified pre-sentence report. N.T., 7/18/14, at 5. The reports indicated that Appellant had three arrests and two adjudications as a juvenile, and ten arrests, six convictions, six commitments, five violations, and four revocations of probation or parole as an adult. While committed as a juvenile and incarcerated as an adult he engaged in assaultive and intimidating behavior against staff and other detainees.

Under all the circumstances presented at the time of sentencing, the sentence imposed was not manifestly unreasonable. To the contrary, the sentence imposed reflected the length and regularity of Appellant's criminal conduct, and his failure to rehabilitate or properly comport himself while in custody or under supervision. The sentence also contemplated the fact that Appellant had served approximately 23 months prior to sentencing. Thus, the net result of the sentence imposed was another seven months' incarceration, assuming Appellant changed his pattern of behavior and comported himself appropriately while in state custody.

PCRA Opinion, at 4-5.

Read within the context of the entire passage, therefore, the court's comments regarding the remainder of Appellant's minimum sentence merely indicated that he would become parole eligible in seven months provided he refrain from the kind of noncompliant behavior that marked his previous times in confinement. We find nothing improper with this observation.

Moreover, the case upon which Appellant relies to advance the proposition that the trial court committed an abuse of discretion by

considering Appellant's parole eligibility, *Commonwealth v. Coulverson*, 34 A.3d 135 (Pa.Super. 2011), is inapposite. In *Coulverson*, the defendant pled guilty to rape, IDSI, sexual assault, aggravated indecent assault, robbery, unlawful restraint, terroristic threats, and two counts of indecent assault that he committed when he was 19 years old. *Id.* at 138–39. The sentencing court imposed an 18 to 90–year aggregate term of imprisonment, which included the imposition of multiple consecutive statutory maximum sentences to accomplish the upper end of the sentence. *Id.* at 139. On appeal, we found that the imposition of a 90–year maximum sentence on a 19–year old defendant was "clearly unreasonable" as the trial court imposed a virtual life sentence without giving any consideration to defendant's characteristics and improperly basing its determination that defendant should "spend as much of his life in prison as the court could order[.]" *Id.* at 148.

Here, the trial court, unlike its counterpart in *Coulverson*, did not focus on retribution at the expense of requisite considerations such as Appellant's individual characteristics, rehabilitative needs, and society's companion interests reflected in 42 Pa.C.S. §§ 9721(b) and 9781(d). Indeed, the court's statement assailed by Appellant specifically contemplated Appellant's repeated failures at rehabilitation and the public's need for protection under the circumstances.

Nor is there any indication here, as there was with the 18 to 90-year sentence in *Coulverson*, that the court sought to impose a sentence "perpetually subject to the discretion of the Board of Probation and Parole,"

as Appellant's maximum sentence was 60 months and was only two times the length of the minimum sentence. Therefore, absent the kind of "outsize *maximum* sentence" imposed as a means to indefinite parole, ***see id.*** (emphasis added), the court's observation that Appellant would serve seven more months before he first became eligible for parole did not violate sentencing precepts as did the sentence in ***Coulverson***.

For the foregoing reasons, Appellant may gain no relief from his ineffectiveness claim.

Order affirmed.

Judge Nichols did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/18