J-S61021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TIMOTHY BALDWIN | |
| Appellant | No. 436 MDA 2015 |

Appeal from the Judgment of Sentence of January 15, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0000769-2014

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED DECEMBER 02, 2015**

Timothy Baldwin appeals the January 15, 2015 judgment of sentence, which was imposed after Baldwin was convicted of two counts of possession of a controlled substance with intent to deliver ("PWID"), 35 P.S. § 780-113(a)(30).  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> On October 26, 2013, Detective [Roland] Breault was investigating a report of shots fired in the 500 block of East Strawberry Street, Lancaster, PA.  Eventually, Kyle Baldwin was identified as a suspect; he was ultimately arrested and charged with discharge of a firearm into an occupied structure and recklessly endangering another person.  On October 28, 2013, Detective Breault spoke to the victims of that incident; the victims informed Detective Breault that "within two days after

---

[*]    Retired Senior Judge assigned to the Superior Court.

the incident, three black males had approached [him] at his residence and had made comments to him about it." Detective Breault testified that the "main part that really stuck was one of the individuals had commented that we watch your wife walk to work everyday and that they're up there just to make money." Detective Breault began an investigation to identify the three black males who made those comments to the victims. Based on his investigation, Detective Breault prepared a photo array including eight similarly featured individuals; [Baldwin] was one of the individuals in the photo array. The victim positively identified [Baldwin] as the person who had approached the victim and made comments to him. A week later, Detective Breault received information that [Baldwin] had parked his vehicle in front of the victim's residence and stood in front of the residence for a period of time. The victim called police, but [Baldwin] was gone by the time officers arrived. On December 6, 2013, Detective Breault received approval to file charges against [Baldwin] for intimidation of a victim or witness, which is graded as a [third-degree felony], based on the fact that the underlying charge was a discharge of a firearm into an occupied structure. The charges were filed before the issuing authority on December 19, 2013.

Detective Breault informed the other patrol officers that [Baldwin] was a suspect in an intimidation related to the shooting of October 26, 2013, and that Detective Breault would be preparing charges and obtaining a warrant. Officer [J.] Hatfield was one of the patrol officers informed before going out on duty and he saw a memorandum that included a picture of [Baldwin]. Officer Hatfield believed that there was an actual warrant out for [Baldwin's] arrest and that [Baldwin] was actually still out and not arrested on that warrant. On December 18, 2013, Officer Hatfield was on duty when he observed a vehicle traveling east on West Strawberry Street towards Vine Street; Officer Hatfield ran the registration tag on the vehicle, which indicted [that Baldwin] was the registered owner. Officer Hatfield asked over the radio if [Baldwin] was still wanted on the warrant; Officer Weaver[1] and Detective Breault advised [Officer Hatfield] that the warrant was still active. As the vehicle turned left, Officer Hatfield observed the driver of the vehicle;

---

[1] Officer Weaver's first name does not appear in the notes of testimony.

Officer Hatfield indicated [that] he believed [that Baldwin] was operating the vehicle. Detective Breault advised Officer Hatfield that if Officer Hatfield stopped [Baldwin], then Officer Hatfield should take [Baldwin] into custody, as Detective Breault had charges prepared for him; no warrant had been obtained at that time. Officer Hatfield called for other officers and they conducted a felony stop. Three occupants were in the car; [Baldwin] was called out first and [was] escorted [] back to the police vehicles. Officer [Jared] Snader handcuffed [Baldwin] and transported him from the scene.

Before transporting [Baldwin], Officer Snader searched [Baldwin] at the scene, searching his pockets and conducting a pat-down for weapons; Officer Snader found $770 in [Baldwin's] pockets. During booking, [Baldwin] was required to remove his shoes; upon removal, Officer Snader found that [Baldwin's] pants had drawstrings at the bottom and [Baldwin's] right pant leg was tucked into his boot and the drawstring was tight at the bottom. After releasing the drawstrings, Officer Snader found a plastic sandwich bag that contained sixty-nine (69) smaller bags of heroin and thirty-six (36) bags of crack cocaine. No paraphernalia related to the heroin or cocaine was found on [Baldwin]. [Baldwin] did not present any characteristics of someone who is under the influence or addicted to heroin or cocaine. The narcotics were sent to the Pennsylvania State Police Harrisburg Regional Crime Laboratory, where it was confirmed that the substances were, in fact, heroin and cocaine.

[Baldwin] was charged with [PWID—heroin and PWID—cocaine]. On April 14, 2014, [Baldwin] filed a motion to suppress evidence and a suppression hearing was held on October 27, 2014. The suppression motion was denied based on the [trial court's] findings that Detective Breault had probable cause to arrest [Baldwin] as of December 6, 2013, for felony charges of intimidation of a victim and that probable cause was transferrable to Officer Hatfield, particularly when Officer Hatfield received the information both in memo form before going on duty and by personal contact via radio with Detective Breault prior to the stop. A stipulated bench trial followed the suppression hearing. The only additional testimony came from the forensic scientist who tested and confirmed the narcotics and from Officer Thomas Ginder, a member of the Selective Enforcement Unit, who testified that based on the amount of drugs, the presence of a significant amount of money, and the lack of paraphernalia, he believed the narcotics were possessed

with the intent to deliver, as opposed to personal use. The [trial court] found [Baldwin] guilty of both charges. A pre-sentence investigation was ordered.

On January 15, 2015, [Baldwin] was sentenced to an aggregate sentence of ten (10) to fifty (50) years; at Count 1 [PWID—cocaine, Baldwin] received a sentence of five (5) to twenty (20) years and at Count 2 [PWID—heroin, Baldwin] received a consecutive sentence of five (5) to thirty (30) years. [Baldwin's] sentencing guidelines indicated the standard range for the charge of [PWID—heroin] was 24-30 months; the standard range for the charge of [PWID—cocaine] was 27-32 months. [Baldwin] had a prior record of felony drug charges, which increased his maximum penalty for the heroin charge to thirty (30) years and for the cocaine charge to twenty (20) years. At sentencing, the Commonwealth pointed out [Baldwin's] lack of verifiable work history in contrast to the leisure activities [Baldwin] reported in his pre-sentence investigation, such as riding four-wheelers and vacationing.

*　　*　　*

On January 23, 2015, [Baldwin] filed a post-sentence motion to reconsider and modify sentence, claiming the imposition of the statutory maximum sentence for each count to run consecutively to each other and was unreasonable and that the sentencing judge improperly considered [Baldwin's] prior record, as it was already factored into the sentencing guidelines. After giving the Commonwealth the opportunity to respond, the [trial court] denied [Baldwin's] post-sentence motion on February 2, 2015.

Trial Court Opinion ("T.C.O."), 4/28/2015, at 1-5. (references to notes of testimony omitted; bracketed material within direct quotes in original; footnotes omitted).

On March 4, 2015, Baldwin filed a notice of appeal. In response, the trial court directed Baldwin to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). Baldwin timely filed a concise statement on March 27, 2015. On April 28, 2015, after receiving an answer to the concise statement

from the Commonwealth, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Baldwin raises the following three questions for our consideration:

I.    Did the trial court err in imposing a sentence above the aggravated range pursuant to the sentencing guidelines set forth by the Commonwealth of Pennsylvania Commission on Sentencing, without acknowledging that it was imposing a sentence above the aggravated range and without stating the basis for the sentence on the record?

II.   Was the sentence imposed by the court so manifestly excessive as to constitute too severe a punishment and clearly unreasonable under the circumstances of the case, as a sentence of ten to fifty years' incarceration was not consistent with the protection of the public, the gravity of the offenses, and the rehabilitative needs of the defendant, and the court did not impose an individualized sentence, and instead focused solely on Baldwin's prior record?

III.  Did the trial court err in denying Baldwin's motion to suppress, where police officers did not have a warrant to arrest Baldwin nor did they have probable cause to believe that Baldwin had committed any crime; and should evidence seized as a result of this unlawful arrest have been suppressed?

Brief for Baldwin at 6.

We begin with Baldwin's third issue because, if successful, the two sentencing issues would be moot. Our standard of review for issues pertaining to the denial of a suppression motion is well-settled, and follows:

In addressing a challenge to a trial court's denial of a suppression motion, we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the Commonwealth prevailed in the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when

read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Brown*, 64 A.3d 1101, 1104 (Pa. Super. 2013) (citation omitted). Our scope of review in suppression matters includes only the suppression hearing record, and excludes any evidence elicited at trial. *See In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013).

The crux of Baldwin's argument is that he was arrested unconstitutionally because the police neither had an arrest warrant nor probable cause to arrest him. As such, Baldwin contends that the evidence seized following his arrest, *i.e.*, the cocaine and the heroin, should have been suppressed. We disagree.

> The Fourth Amendment [to] the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution provide that individuals shall be free from unreasonable searches and seizures. U.S. Const. amend. XIV; Pa. Const. art. I, § 8. An officer may conduct a full custodial search of a suspect when the suspect is lawfully arrested. *Commonwealth v. Long*, 414 A.2d 113, 115 (Pa. 1980). When an officer makes an unlawful arrest, any evidence seized during a search incident to the arrest must be suppressed. *See Commonwealth v. Lovette*, 450 A.2d 975, 981 (Pa. 1982). Consequently, the propriety of a search depends upon the validity of the arrest. In considering whether the illegal drugs recovered from the search of [an appellant] are admissible into evidence, therefore, we must first determine whether the officer's search of [an appellant] was made pursuant to a lawful arrest.
>
> In determining whether [an appellant] was lawfully arrested, we begin with the notion that law enforcement authorities must have a warrant to arrest an individual in a public place unless they have probable cause to believe that 1) a felony has been

committed; and 2) the person to be arrested is the felon. ***Commonwealth v. Travaglia***, 467 A.2d 288, 292 (Pa. 1983).

***Commonwealth v. Clark***, 735 A.2d 1248, 1251 (Pa. 1999) (citations modified). The circumstances when a person may be arrested without a valid arrest warrant also are codified in our rules of criminal procedure. Pursuant to Rule 502 of the Pennsylvania Rules of Criminal Procedure, a person may be arrested without a warrant:

> (a) when the offense is a murder, felony, or misdemeanor committed in the presence of the police officer making the arrest; or
>
> (b) upon probable cause when the offense is a felony or murder; or
>
> (c) upon probable cause when the offense is a misdemeanor not committed in the presence of the police officer making the arrest, when such arrest without a warrant is specifically authorized by statute.

Pa.R.Crim.P. 502(2)(a)-(c).

Baldwin maintains that his arrest was unconstitutional both because of the lack of a warrant and the absence of probable cause. It is undisputed that the police in this case did not have valid arrest warrant at the time that Baldwin was arrested, even though some of the involved officers mistakenly believed that, at some point, a valid warrant had issued. However, the arrest still is lawful if the arresting officers had probable cause to believe that Baldwin had committed a felony. ***See id.***

> In order to determine whether probable cause exists to justify a warrantless arrest, we must consider the totality of the circumstances. ***Clark***, 735 A.2d at 1252; ***see also Illinois v. Gates***, 462 U.S. 213, 233 (1983). "Probable cause exists where

the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed," and must be "viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training." **Clark**, *supra* at 1252 (quotation omitted). As we have stated:

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

> **Commonwealth v. Thompson**, 985 A.2d 928, 931 (Pa. 2009) (emphasis in original; citations and quotation marks omitted).

**Commonwealth v. Martin**, 101 A.3d 706, 721 (Pa. 2014) (citations modified).

Instantly, Detective Breault was investigating reports that multiple individuals were intimidating the victims of the October 26, 2013 shooting. The perpetrator of that crime was Baldwin's brother Kyle. Kyle Baldwin was charged with discharging a firearm into an occupied structure, which is graded as a third-degree felony. **See** 18 Pa.C.S. § 2707.1(b).

Detective Breault received reports that, within a couple of days after the shooting, three individuals had threatened and intimidated the victims of Kyle Baldwin's shooting. Detective Breault presented a photo array to the victim. The victim selected Baldwin's photograph from the eight contained

in the array. One week later, Baldwin again appeared at the victim's home and parked his car in front of the residence, but he left before he could be apprehended.

From this information, a reasonable police officer could have concluded that probable cause existed to arrest Baldwin for the crime of intimidation of a witness, which would have been graded as a felony because the underlying offense, discharging a firearm into an occupied structure, was a felony. *See* 18 Pa.C.S. § 4952(b)(4). Baldwin appeared at the home of the victims of a crime that his brother perpetrated and threated the occupants. One of the victims identified Baldwin as one of the actors. Finally, Baldwin revealed himself as one of the actors when he went back to the victim's home a short time later and parked in front of the residence. Probable cause existed to arrest Baldwin for a felony, and, consequently, the arrest was not unconstitutional. The trial court correctly did not suppress the evidence that resulted from Baldwin's arrest.[2]

_____

[2] Baldwin does not challenge the fact that Detective Breault, who investigated the case and obtained all of the relevant information, did not make the actual arrest. Officer Hatfield did. Baldwin notes only that "the court found that Officer Hatfield had probable cause to arrest Baldwin, because it was passed from Detective Breault." Brief for Baldwin at 24. He does not allege that the transfer of information, itself, was unconstitutional. Hence, we do not consider the "collective knowledge" doctrine, or whether the police in this case satisfied the mandates of that principle. *See Commonwealth v. Yong*, 120 A.3d 299, 310-11 (Pa. Super. 2015) ("The collective knowledge doctrine unquestionably authorizes police officers to act upon information or instructions from their fellow officers.").

In his two remaining issues, Baldwin challenges the discretionary aspects of his sentence. A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute. This Court repeatedly has stated that, in order to invoke this Court's jurisdiction when raising a challenge to the discretionary aspects of a sentence, an appellant must: (1) file a timely appeal; (2) preserve the issue he or she wishes to present on appeal; (3) include in his or her brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence pursuant to Pa.R.A.P. 2119(f); and (4) present a substantial question in his or her concise statement that the sentence is not appropriate under the sentencing code. *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (citations omitted). An appellant must satisfy all four requirements. *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013).

Here, Baldwin filed both a timely notice of appeal and a post-sentence motion. He also has included a Pa.R.A.P. 2119(f) statement in his brief. *See* Brief for Baldwin at 11-13. Thus, Baldwin has complied with the technical aspects necessary for a discretionary aspects of a sentence challenge. We now must determine whether Baldwin has raised a substantial question. We must consider whether the sentence "violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Commonwealth v. Hill*, 66 A.3d 365, 368 (Pa. Super. 2013)

(citations omitted). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." *Id.*

Baldwin essentially raises two specific points to prove that he has raised a substantial question. First, Baldwin argues that the trial court failed to state on the record its reasons for imposing an aggravated range sentence. Second, Baldwin maintains that the trial court imposed an unduly excessive sentence based only upon his prior record, which already receives adequate consideration in the guideline calculation, and without considering his rehabilitative needs. Both arguments raise substantial questions, and we will proceed to review the merits of his claims. *See Commonwealth v. Booze*, 953 A.2d 1263, 1278 (Pa. Super. 2008) ("an allegation that the [trial] court failed to state adequate reasons on the record for imposing an aggravated-range sentence . . . raises a substantial question for our review"); *Commonwealth v. Boyer*, 856 A.2d 149, 151-52 (Pa. Super. 2004) (finding substantial question where defendant argued "that his sentence was manifestly excessive and that the court erred by considering only the serious nature of the offenses and failing to consider mitigating factors such as his age (19) at sentencing, his rehabilitative needs, his limited education, his years of drug dependency, and his family dysfunction").

In his first issue, Baldwin argues that the trial court failed adequately to state the reasons for imposing a sentence that exceeded the aggravated

range of the sentencing guidelines. Our Sentencing Code delineates the considerations that a trial court must take into account when formulating a sentence:

> [T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721(b). Furthermore:

> In every case in which the court imposes a sentence for a felony or misdemeanor, modifies a sentence, resentences an offender following revocation of probation, county intermediate punishment or State intermediate punishment or resentences following remand, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

*Id.* When a trial court sentences a defendant beyond the ranges recommended by the sentencing guidelines, that court must state its reasons for departing from the guidelines on the record. *Commonwealth v. Bowen*, 55 A.3d 1254, 1263-64 (Pa. Super. 2012). When doing so,

> a trial judge . . . [must] demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as [it] also states of record the factual basis and specific reasons which compelled [it] to deviate from the guideline range.

*Id.* at 1264.

- 12 -

Baldwin concedes that the trial court stated plenty of reasons for the specific sentence that the court imposed on the record. However, he argues that "at no time did the court state that any of its reasons for imposing sentence constituted aggravating factors or that they justified the maximum sentence which was above the aggravated range of the sentencing guidelines." Brief for Baldwin at 16. Baldwin also points out that the trial court never directly acknowledged that the sentence was above the aggravated range. *Id.* Baldwin's hyper-technical argument is unavailing. Nothing in the above standards requires a trial court to use any particular buzzwords in fashioning the sentence. It is of no moment that the trial court did not specifically state that the sentence fell above the aggravated range. The court need only demonstrate its awareness of the sentencing guidelines and offer reasons for its departure therefrom. *Id.* The trial court did that in this case.

At sentencing, the court offered the following reasons for imposing the lengthy sentence upon Baldwin:

> Having heard the comments of counsel, the defendant and the Commonwealth, the Court imposes the sentence for the following reasons:
>
> The defendant is 33 years of age, which shows sufficient maturity to understand the significance of his acts, having been a high school graduate, in addition passed the certification relative to becoming a licensed barber.
>
> He can read, write and understand the English language. He has somewhat of a limited employment history. However, since becoming a barber, [] working at $40 per hour certainly shows he can follow directions.

He has a significant prior criminal record. This includes simple assault as a juvenile, two manufacturing cases as a juvenile in '87—I'm sorry, '97 and '98.

His felony drug history began in 2001 as an adult, having already been convicted of felonies as a juvenile. 2001 a felony drug charge. 2002 a firearms charge. 2003 a firearms charge. 2003 a felony drug charge. 2008 a felony drug charge, which he was given basically a maximum county sentence. 2007, felony drugs, where he was given – multiple felony drug counts, where he was given on one a three-to-six year state prison sentence, followed by a consecutive two-to-four year prison sentence equaling a five-to-ten year state prison sentence. He has had three violations of his probation and parole.

Noting that he grew up in poverty as a young man, he did actually have at least a mother who cared and did as much as she could for him.

He's lived in New Jersey, Philadelphia, and Lancaster. The only indication relative to drugs was a significant marijuana habit.

He then gained employment as a licensed barber and when working was making a significant hourly rate at $40 per hour.

The Court notes that based on his prior felony drug offenses, he owes Collections Enforcement in probation and parole in excess of $44,000.

The Court counts at least a minimum of five prior felony drug offenses. Those, in relation to the firearms offenses, show that Mr. Baldwin is not only someone who refuses to change his lifestyle, but continues to become involved immediately upon his release from state prison or county prison right back into the drug environment. Despite the fact that he has significant ability to earn an income, has decided that delivering and possessing with intent to deliver drugs will be his lifetime ambition.

I have considered the pre-sentence report in detail. I have considered the sentencing guidelines and the maximum penalties authorized by law. The maximum penalties, if consecutively imposed, would be 50 years of incarceration and fines of up to $700,000.

I've considered the character and statement of the defendant, as well as the arguments of counsel.

> This is the type of individual who, since a juvenile, has decided his life will be that of a felon, of a drug deliverer and nothing but. The dangerous part of all of this is having two firearms violations.
>
> This gentleman's incarceration is warranted because a lesser sentence would not only depreciate the seriousness of the crimes, but the seriousness of his prior record and his involvement in the drug culture.

Notes of Testimony ("N.T."), 1/15/2015, at 8-11.

The trial court understood the sentencing guidelines, and offered multiple bases for the significant sentence that it imposed upon Baldwin. Most notably, the court explained that Baldwin's lengthy and persistent criminal history necessitated a substantial sentence, *inter alia*, to protect the public and community from Baldwin's criminal activities. The court satisfied 42 Pa.C.S. § 9721(b), and did not abuse its discretion.

In his final issue, Baldwin argues that the trial court imposed a manifestly excessive sentence that was based exclusively upon Baldwin's prior record, and that ignored the mitigating evidence. Baldwin is not entitled to relief.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Anderson***, 830 A.2d 1013, 1018 (Pa. Super. 2003) (quotation omitted).

Baldwin's assertion that the trial court relied only upon his prior crimes is belied by the record. As is apparent from the trial court's rationale above, the trial court did place great weight upon Baldwin's prior criminal history, which the court was entitled to do. Since his juvenile days, Baldwin has been selling drugs and illegally owning firearms. Baldwin has been sentenced to probation, county jail, and state prison, none of which effectively has deterred Baldwin from committing crimes. The trial court correctly placed great emphasis upon the failure of shorter punitive measures to alter Baldwin's criminal lifestyle. However, contrary to Baldwin's argument, this was not the only factor that the trial court considered. The court contemplated the contents of the pre-sentence report, as well as Baldwin's education, his barber's license, his earning capacity, his intelligence, and his family history. In the trial court's mind, those factors simply could not overcome Baldwin's criminal history or his inability and unwillingness to stop selling drugs. To so conclude was the trial court's prerogative, and within the court's discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2015

- 16 -