J-A07024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ETHAN W. RIPPEY | : | |
| | : | |
| Appellant | : | No. 627 MDA 2019 |

Appeal from the Judgment of Sentence Entered February 20, 2019
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001230-2017

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 20, 2020**

Ethan W. Rippey ("Appellant") appeals from the Judgment of Sentence imposed after a jury convicted him of Rape by Forcible Compulsion, Involuntary Deviate Sexual Intercourse by Forcible Compulsion, Sexual Assault, and Simple Assault.  He asserts an evidentiary error and challenges the discretionary aspect of his aggregate sentence of 17 to 34 years' incarceration.  After careful review, we affirm.

The underlying facts, as gleaned from the record and the trial court's Pa.R.A.P. 1925(a) opinion, are as follows.  On August 21, 2016, K.H. ("the victim") and Appellant, both college students, were drinking at a college party in York when Appellant invited K.H. and others over to his house.  Appellant and the victim went alone to the house to play beer pong.  They kissed a bit, and then toured the house, ending up in Appellant's bedroom.  They kissed some more and Appellant digitally penetrated the victim's vagina.  When the

penetration became rough, however, the victim asked him to stop. He did not stop, and she pushed him away. Appellant then grabbed her and forced his penis into her mouth. Although the victim pushed him away again, and continually said "no," Appellant pushed her onto his bed, strangled her, and anally and vaginally raped her. After Appellant climaxed, he called the victim a "dirty little slut" as she ran crying out of the house and back to the party. Her friends took her to the York Hospital where a forensic nurse conducted a SAFE rape examination. One week later, the victim reported the incident to the college's campus security and eventually she reported it to the York City Police Department.

The Commonwealth charged Appellant with the above offenses. Prior to trial, Appellant filed a Motion *in limine*, requesting, among other things, that the court preclude the Commonwealth's sexual assault forensic expert from testifying that the victim's injuries were consistent with "non-consensual sex." The court granted the Motion, in part, and precluded the expert from using the phrase "consistent with non-consensual sex." N.T. Trial, 11/13/18, at 21-22. The court noted, without objection from Appellant, that the expert would be allowed to opine on whether the injuries were caused by force.

At Appellant's three-day jury trial, the Commonwealth presented the testimony of the victim, the SAFE nurse examiner, and the sexual assault forensic expert, among others. The victim testified regarding the evening of the rape and her extensive physical and psychological injuries. On cross-examination, she testified that she had had one prior incident with Appellant

in the spring of 2016 where all she remembered was drinking and playing video games with Appellant and two others before waking up bent over Appellant's bed with Appellant standing behind her pulling up his pants, and her crying because she did not know what had occurred. She also recalled that she was bleeding anally later that evening.

The nurse examiner testified regarding the extensive injuries to the victim's body, stating that of 270 SAFE rape examinations she had conducted, the examination of the victim revealed the most injuries she had ever had to document. She stated that the victim had numerous lacerations, abrasions, and bruises in her vagina and anus, including a large laceration in the victim's anus "caused by blunt force trauma." N.T. Trial, 11/15/18, at 340. The nurse also testified that she was unable to conduct a full internal examination because the victim was in too much pain.

The sexual assault expert testified that she reviewed the victim's medical chart and opined that the lacerations the victim received on August 21, 2016, resulted from "blunt force trauma," and were "consistent with force." *Id*. at 367-68, 371.

Appellant testified that the August 2016 encounter was consensual rough sex, and stated "it takes two to tango." *Id*. at 418. When counsel acknowledged that Appellant had been in the courtroom throughout all of the testimony presented by the Commonwealth, Appellant responded, "Yeah. I've missed a lot of class because of it." *Id*. at 430.

The jury convicted Appellant of the above charges. The court ordered a presentence investigation ("PSI"), and the Sexual Offenders Assessment Board ("SOAB") evaluated Appellant.[1]

The court held Appellant's sentencing hearing on February 20, 2019. The Commonwealth presented a statement from the victim and her aunt. A few of Appellant's friends and family members presented statements, and the court acknowledged that Appellant had provided many letters of support from other friends and family members. The sentencing court noted its review of, *inter alia*, the PSI report, the SVP report, the victim's impact statement, and the many letters written on behalf of Appellant. The court also noted Appellant's prior record score of zero before it imposed a sentence of 7½ to 15 years' incarceration on the Rape by Forcible Compulsion conviction, a consecutive term of 9½ to 19 years' incarceration on the IDSI by Forcible Compulsion conviction, and a concurrent term of 3 to 6 months' incarceration for the simple assault conviction, for an aggregate of 17 to 34 years' incarceration.[2]

Appellant filed a Post-Sentence Motion, which the court denied. This direct appeal followed. Appellant filed a Pa.R.A.P. 1925(b) Statement; the trial court filed a responsive Opinion.

In his Brief, Appellant raises the following issues for our review:

---

[1] The Board concluded that Appellant is not a sexually violent predator.

[2] The conviction for Sexual Assault merged for purposes of sentencing.

1.  Did the lower court manifestly abuse its discretion by imposing two consecutive sentences for a single criminal episode, each of which was above the aggravated range of the sentencing guidelines, by improperly focusing on certain statutory factors while ignoring others, and imposing a harsh and unreasonable sentence on Appellant, a first-time offender?

2.  Did the trial court improperly permit a Commonwealth expert witness to testify that injuries were caused by force, thereby depriving the jury of its role as the sole arbiter of credibility?

Appellant's Brief at 5.

Appellant avers that, in imposing consecutive sentences, each of which was over the sentencing guidelines' aggravated range, the trial court imposed an unfairly excessive sentence. He contends that he was a first-time offender and, as such, the court erred in failing to consider his potential for rehabilitation and his "excellent characteristics and [ ] strong support network, along with his lack of problems in custody[.]" *Id*. at 20, 22.[3] Appellant contends that the sentence "reveals scant consideration of anything other than victim impact and the court's impulse for retribution on the victim's behalf."

---

[3] For Rape by Forcible Compulsion and IDSI by Forcible Compulsion, both graded as first-degree felonies, the Pennsylvania Commission on Sentencing recommends a standard range sentence of 48-66 months' incarceration, plus 12 months for an aggravated sentence, where the offender has a prior record score of zero. Here, Appellant's Rape conviction earned him a sentence one year above the suggested aggravated sentence, *i.e.*, minimum 7½ years, and his IDSI conviction earned him a sentence 3 years above the aggravated range, *i.e.*, minimum 9½ years. Neither sentence exceeds the statutory maximum of 20 years' incarceration. **See** 18 Pa.C.S. § 1103(1).

*Id*. at 21, quoting *Commonwealth v. Coulverson*, 34 A.3d 135, 148 (Pa. Super. 2011).

A challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 (Pa. Super. 2001). Prior to reaching the merits of a discretionary sentencing issue:

> We conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[]. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006) (citations omitted).

In the instant case, Appellant has satisfied the first three requirements by filing a timely Notice of Appeal, properly preserving the issue in a Post-Sentence Motion to modify his sentence, and by including a Rule 2119(f) Statement in his Brief to this Court.

As to whether Appellant has presented a substantial question, we note:

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citations and quotation marks omitted).

Claims that the sentencing court did not adequately consider mitigating factors generally do not raise a substantial question. *See Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013) ("This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."); *Commonwealth v. Zirkle*, 107 A.3d 127, 133 (Pa. Super. 2014) ("[W]e have held that a claim that a court did not weigh the factors as an appellant wishes does not raise a substantial question."). It is also well-settled that a bare challenge that the trial court erred in imposing consecutive sentences does not raise a substantial question. *Id.* at 133; *Commonwealth v. Moury*, *supra* at 171-72 (Pa. Super. 2010) ("The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.").

However, a claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guidelines presents a substantial question. **Commonwealth v. Hanson**, 856 A.2d 1254, 1257 (Pa. Super. 2004). Additionally, a substantial question exists when a defendant alleges that the court relied on improper factors in imposing his sentence. *Commonwealth v. Downing*, 990 A.2d 788, 792 (Pa. Super. 2010).

Appellant contends that the court abused its discretion and imposed an unreasonable sentence outside the guidelines because "[t]here were excellent reasons to not impose aggravated range sentences, much less to run them consecutively." *Id*. at 17. Appellant avers that the court failed to consider that Appellant was 20 years old at the time of the offenses, with no prior record, who "started a business, went to school, overcame [ADHD], [and] had an extensive support network[.]" Appellant's Brief at 18, 25. Appellant states that the court improperly considered the impact of the crime on the victim in imposing consecutive sentences, and states that "[c]onflating a support system, which favors rehabilitation and a reasonable sentence, with the gravity of the offense is an improper balancing of the [Section] 9781(d) statutory factors." *Id*. at 19. We conclude Appellant has raised a substantial question and will, thus, address the merits of his claim.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

The sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing are instructive and advisory, but are not binding on the sentencing court. The court is obligated to consider the guidelines, but is under no duty to sentence a particular defendant within the guidelines or to impose the minimum possible confinement consistent with the guidelines. ***Commonwealth v. Walls***, 926 A.2d 957, 964 (Pa. 2007); ***Commonwealth v. Dodge***, 957 A.2d 1198, 1200 (Pa. Super. 2008). In general, a sentencing judge must consider pertinent facts, sentencing factors, and the force of the evidence and may not commit an error of law or inflict punishment that exceeds statutory prescriptions. ***Commonwealth v. Youngkin****, 427 A.2d 1356, 1369 (Pa. Super. 1981).

Where the trial court has the benefit of a PSI report, our Supreme Court has held that "it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1135 (Pa. Super. 2009) (discussing ***Commonwealth v. Devers***, 546 A.2d 12, 18–19 (Pa. 1988)).

It is well-settled that the sentencing judge has discretion to impose a sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. ***See Commonwealth v. Mastromarino****, 2 A.3d 581, 586 (Pa. Super. 2010); ***Commonwealth v. Marts****, 889 A.2d 608 (Pa. Super. 2005). ***See also*** 42 Pa.C.S.A. § 9721(a). A

defendant is "not entitled to a volume discount for his or her crimes." **Mastromarino**, **supra** at 586 (citation omitted).

The court also determines whether aggravating circumstances exist. A sentencing judge "has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." **Commonwealth v. Stewart**, 867 A.2d 589, 593 (Pa. Super. 2005).

In addition, a court may consider uncharged criminal conduct for sentencing purposes. **Commonwealth v. P.L.S.**, 894 A.2d 120, 131 (Pa. Super. 2006). **See also** 204 Pa.Code § 303.5(d). "Not only does the case law authorize a sentencing court to consider unprosecuted criminal conduct, the sentencing guidelines essentially mandate such consideration when a prior record score inadequately reflects a defendant's criminal background." **P.L.S.**, **supra** at 131.

Where a trial court imposes a sentence outside of the sentencing guidelines, the trial court must provide, in open court, a "contemporaneous statement of reasons in support of its sentence." 42 Pa.C.S. § 9721(b); **Commonwealth v. Bowen**, 55 A.3d 1254, 1264 (Pa. Super. 2012).

> The court . . . must demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also

states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

*Id.* at 1264 (brackets and citation omitted).

This Court may only vacate and remand a case for resentencing if we first conclude that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3). The Sentencing Code does not define the term "unreasonable." However, our Supreme Court has made clear that "rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review." *Walls*, 926 A.2d 957, 964 (Pa. 2007).

Here, prior to imposing sentence, the court considered Appellant's PSI and SVP reports, and other pertinent aggravating and mitigating information (including the letters and testimony in support of Appellant), as well as the impact of the crime upon the victim. The court acknowledged the sentencing guidelines, but concluded that they were inappropriate under the circumstances. N.T. Sentencing, 2/20/19, at 61-62. Additionally, the court did not agree with all the findings of the SVP report.[4] The court explained its sentencing decision on the record, which it summarized in its 1925(a) Opinion:

---

[4] The court agreed with the SVP report's ultimate conclusion that Appellant is not a sexually violent predator.

- 11 -

While [Appellant] has no prior record, the Court finds him to be a violent person, and therefore dangerous. At trial, [Appellant] testified about his enjoyment of rough sexual intercourse and how he intentionally anally sodomized the victim after she said no to his advances in that record. He also complained how the trial cut into his class schedule, with no apparent remorse for the impact his actions had upon his victim.

The court considered [Appellant's] rehabilitative potential at the time of sentencing. . . . While [Appellant] had no prior record score, which was in fact considered at sentencing, during the course of the trial the defense sought to elicit testimony regarding a prior sexual interaction between [Appellant] and the victim. What was revealed during this defense questioning was that the victim was extremely intoxicated and in no state of mind to be able to consent to that prior sexual encounter. She woke up not knowing what had occurred, bent over [Appellant's] bed with her pants down, with [Appellant] pulling up his pants. This evidence was considered as relevant to show that [Appellant] engaged in sexual misconduct with the same victim on a prior occasion and has a *modus operandi* as it relates to this victim. Specifically while [Appellant] did not have a prior criminal record, the defense revealed that he had previously forced himself upon the intoxicated victim for nonconsensual sex after isolating her, just as he did in the instant case.

This was also considered in assessing the danger of [Appellant] reoffending in the future, a point where the Court parted ways with the SVP report conclusion that [Appellant] had no prior history of sexual offenses.

* * *

The [c]ourt also properly considered the severity of injuries to the victim, and found there to be unusual cruelty in this case. Ms. Jenkins testified that of the 270 SAFE exams of sexual assault victims she had previously conducted, she rated this case as the worst case she had seen in terms of physical injuries to the victim. As a result of deep and lengthy rectal tears, the victim had to endure the humiliation of incontinence, soiling herself repeatedly in the days and weeks following this assault. . . . [The victim] took medical leave from college . . . , her mental health eroded, and she lost her sense of who she was and what she wanted from life. The [c]ourt found these physical, emotional, and mental injuries were recklessly inflicted by [Appellant] with no regard for the

suffering of the victim. He, in fact, called her a "dirty little slut" as he shoved her out the door of the house where he just raped and sodomized her, in order to cruelly maximize the extent to which she was degraded.

As the severity of the harm and the brutality of the forcible anal sodomy was distinct in severity and impact upon the victim, beyond that suffered in the rape, the Court held that a consecutive sentence was appropriate and just. Considering all the above information[,] the court found [Appellant] not to have rehabilitative potential for his lack of remorse for his actions and the trauma he caused the victim.

Trial Ct. Op. at 5-8 (citations to N.T. omitted). *See also* N.T. Sentencing, 2/20/19, at 61-82.

Based on our review of the sentencing transcript and the relevant case law, we conclude that the sentencing court did not "ignore[] or misappl[y] the law, exercise[] its judgment for reasons of partiality, prejudice, bias or ill will, or arrive[ ] at a manifestly unreasonable decision." *Raven*, *supra*. At the sentencing hearing, the court explained on the record why the sentencing guidelines did not apply, why consecutive rather than concurrent sentences were appropriate, and how it considered not only Appellant's age and potential for rehabilitation, but also the severity of the crime, the impact on the victim, and Appellant's lack of remorse. The court also considered the PSI and SVP reports, indicating it had reviewed all of the sentencing factors. Although the sentences imposed for the Rape by Forcible Compulsion and IDSI by Forcible Compulsion exceeded the recommended sentencing guidelines, the sentences do not exceed the statutory maximums.

In light of the facts of the case, we conclude Appellant's sentence is not "manifestly unreasonable," and the court did not abuse its discretion in ordering consecutive rather than concurrent sentences. Accordingly, Appellant's challenge to the discretionary aspects of his sentence is without merit and fails.

In his second issue, Appellant complains that the court erred in allowing the Commonwealth's sexual assault expert to testify that the injuries sustained by the victim were caused by "force." Appellant's Brief at 25-26. He contends that because "forcible compulsion" was an element of the Rape and IDSI crimes charged, allowing the expert to use to the words, "forced trauma," "blunt force trauma," and "force," "invaded the jury's exclusive role as the arbiter of credibility as it resolved an important issue between the complaining witness and Appellant in the former's favor." *Id*. at 26. Because Appellant's counsel did not object before or during the expert's testimony, he has waived this issue.

Our standard of review pertaining to a challenge to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

Pa.R.E. 704 permits expert opinion testimony on the ultimate issue. Pa.R.E. 704 ("An opinion is not objectionable just because it embraces an ultimate issue."). The court has discretion to admit or exclude expert opinions on the ultimate issue, "depending on the helpfulness of the testimony versus the potential to cause confusion or prejudice." *McManamon v. Washko*, 906 A.2d 1259, 1278-79 (Pa. Super. 2006) (citations omitted).

However, it is axiomatic that, in order to advance a claim of error in a ruling to admit or exclude evidence, a party must make a specific and timely objection. *See* Pa.R.E. 103(a)(1). "We have long held that '[f]ailure to raise a contemporaneous objection to the evidence at trial waives that claim on appeal.' " *Commonwealth v. Tha*, 64 A.3d 704, 713 (Pa. Super. 2013) (citations omitted). *See* Pa.R.A.P. 302(a)("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Our review of the notes of testimony, from both the hearing on the Motion *in Limine* and the trial, reveals that at no time did Appellant object to the expert's use of the terms "force," "forced trauma" or "blunt force trauma." Accordingly, Appellant did not preserve his objection and this issue is waived.[5]

---

[5] Moreover, the trial court gave the following jury instruction: "Nurse Huggins [testified] that the injuries received by [the victim] were caused by forcible penetration. That was a medical conclusion. It is up to the jury to decide

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>03/20/2020</u>

---

whether or not that testimony establishes beyond a reasonable doubt the legal element of force[.]" N.T. Trial, 11/15/18, at 60, 64-65. We presume that the jury followed the trial court's cautionary instruction and that any potential prejudice regarding Ms. Huggins' testimony was cured. **See Commonwealth v. Simpson**, 66 A.3d 253, 269 (Pa. 2013) (presuming that juries follow instructions); **Commonwealth v. Counterman**, 719 A.2d 284, 300 (Pa. 1998) (concluding that any prejudice that the defendant may have faced in murder case based on the coroner witness's use of the word "homicide" was cured by the trial court's cautionary instruction that it was the jury's responsibility to decide the ultimate issue in the case).