J-S05043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN LLEWELLYN DAVIS, III | : | |
| | : | |
| Appellant | : | No. 454 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 5, 2022
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000451-2021

BEFORE: BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: MAY 11, 2023**

John Llewellyn Davis, III, appeals from the judgment of sentence entered on his convictions for burglary, criminal trespass, criminal mischief, and theft by unlawful taking.[1] Davis argues the convictions were against the weight of the evidence and the trial court improperly admitted evidence. We affirm.

The trial court accurately summarized the facts as follows:

The case involves an incident at the Yogi Bear Campground on November 7, 2020. An individual entered the laundry room at the Campground in the middle of the night, vandalized several lottery machines, a change machine[,] and a soap dispenser. The individual entered the laundry room[,] turned off the lights, and smashed a fake camera and then began to destroy the other machines. The individual was seen on an operating camera beating on the machines with bolt cutters[,] taking $27.00 from

---

[1] 18 Pa.C.S.A. §§ 3502(a)(4), 3503(a)(1)(i), 3304(a)(5), and 3921, respectively.

the lottery machines and causing $9,000.00 worth of damage to the machines in the room.

The operating surveillance camera showed a man with a mustache, wearing a black ball cap, converse sneakers and a tattoo on his right hand doing the damage in the laundry room. Two days prior to the incident at Yogi Bear, at a gas station near the campgrounds, another theft occurred. Two men went into the gas station, one began talking with the cashier and the other began playing on the coin dozer machine. The man who began talking with the cashier identified himself as John Davis and was very friendly with her. After talking with the cashier, [Davis] went over to the game machine and began shaking it. The machine, when shaken, makes a sound like a car alarm[. T]he cashier told him to stop shaking the machine[. H]e did finally stop shaking the machine. While [Davis] distracted the cashier, the other man broke into the other game machine.

The cashier gave descriptions of the two men and identified [Davis] as one of the two men who were involved in the incident in the gas station. She testified that he had a tattoo on his right hand. The cashier reviewed the surveillance footage and testified that it was a fair and accurate depiction of the events that occurred at the gas station on November 5, 2020. The cashier turned the surveillance video over to the State Police. [The video also contained images of a white Ford Fusion vehicle, which was registered to Davis's father.]

Initially, the State Police were unable to determine the identity of the person on the surveillance video. The surveillance video from the two incidents were reviewed and shared with the operations manager at Yogi Bear. She was able to identify the individual from the gas station video as the same individual observed damaging the machines in the laundry room by the tattoo on the back of his hand. [Davis] had been at the campground as the guest of another person who was registered there. Video surveillance showed [Davis] entering the campground from the woods after being dropped off at the front gate of the campgrounds. The operations manager turned over all the video to the Trooper investigating the case.

Trial Court Opinion, filed June 7, 2022, at 2-3 (citations to trial transcript omitted).

The jury found Davis guilty of the aforementioned offenses. He was sentenced to 18 to 36 months' incarceration. Davis filed a post-sentence motion, which was denied. This appeal followed.[2]

Davis raises the following two issues:

1. Whether the guilty verdicts were against the weight of the evidence; thus, warranting a new trial?

2. Whether the trial court committed an error of law in permitting the Commonwealth to present testimony regarding an alleged incident at another location for which [Davis] was not charged?

Davis's Br. at 5.

Davis first argues the verdicts were against the weight of the evidence. *Id.* at 8. He contends that his father credibly testified he was at his father's house on the night of November 6, 2020 – the night of the Yogi Bear Campground incident – and therefore could not have committed the crime. *Id.* at 9. According to Davis, he is entitled to a new trial because "[t]he jury either ignored this testimony or gave it equal weight to the Commonwealth's evidence in rendering its guilty verdicts and because of this occurring Davis was denied justice and a fair trial." *Id.*

_____

[2] While Davis's post-sentence motion was pending, Davis filed a *pro se* notice of appeal on April 25, 2022. The court thereafter denied the post-sentence motion on June 7, 2022. We treat this appeal as filed as of the date of the denial of the post-sentence motion, and therefore it is timely and not premature. *See* Pa.R.A.P. 905(a)(5) (stating "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").

When reviewing a weight challenge on appeal, we do not determine ourselves whether the verdict was against the weight of the evidence. Rather, we review the trial court's exercise of its discretion in determining, in the first instance, whether to sustain the challenge. *Commonwealth v. Johnson*, 192 A.3d 1149, 1152-53 (Pa.Super. 2018). "To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa.Super. 2017) (internal quotation marks and citation omitted). Further, "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (quoting *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999)). "When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited." *Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa.Super. 2012) (citation omitted). Usually, "unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Id.* (citation omitted).

Here, Davis's father testified that at the time of the Yogi Bear Campground incident, Davis was living with him but "he came and went." N.T., 4/4/22-4/5/22, at 105. He stated that Davis came home in the evening of November 6, 2020 and left the next morning on November 7, 2020. *Id.* at

107. He testified that he did not see Davis, but he knew he was there because he "makes noises" and "is not the quietist." *Id.* He also stated he was "pretty sure" that two troopers came to his house on November 7, 2020 to talk to him. *Id.*

The Commonwealth challenged Davis's father's testimony by offering rebuttal evidence. Trooper Seth Thomas Jarzynka testified that he spoke to Davis's father on November 6, 2020 regarding the gas station incident because his vehicle was identified on the surveillance video. *Id.* at 115. Davis's father told him that Davis had borrowed his car and "was gone for the past few days[.]" *Id.* at 116. The father stated that Davis returned the car to him on November 5, 2020. *Id.* at 115.

Trooper Kalee Wietrzykowski testified that she spoke to Davis's father on November 10, 2020, by telephone. *Id.* at 118. He related to her he last saw Davis about a week prior to that date, which was around November 3, 2020. *Id.* at 118-19. She testified that the father said he had a white Ford Fusion and he occasionally let Davis drive it. *Id.* Trooper Wietrzykowski stated Davis's father did not tell her that Davis was at his house on the evening of November 6, 2020. *Id.* at 120. She stated that she would have included such information in her report. *Id.*

The trial court found the verdicts were not against the weight of the evidence. By virtue of the verdicts, it is clear that the jury, as the fact-finder and sole judge of credibility, did not believe Davis's father's alibi testimony. The jury was free to believe all, part, or none of the evidence presented in

judging the credibility of the witnesses, and presumably did not find Davis's father to be credible. **Champney**, 832 A.2d at 408. The jury's choice not to believe his testimony was purely within its discretion and will not be disturbed on appeal. Davis essentially asks this Court to reassess and reweigh the evidence presented at trial, which we will not do. Our review of the record indicates that the evidence supporting the jury verdicts was not tenuous, vague, or uncertain. Therefore, we discern no abuse of discretion in the trial court's denial of Davis's weight challenge.

Davis next argues the trial court erred in admitting evidence of the gas station incident that occurred two days before the instant crime at Yogi Bear Campground. Citing Pennsylvania Rule of Evidence 404(b)(2), Davis concedes the use of such evidence to prove identity was permissible, but argues its prejudicial effect clearly outweighed its probative value. Davis's Br. at 10. Davis emphasizes that the "testimony and video evidence were regarding a theft crime similar to the one for which Davis was on trial and within days of the subject crime." **Id.** According to Davis, "[t]he introduction of such evidence clearly would allow the jury to speculate that if Davis was a party to and committed that crime then he most likely committed the subject crime which is extremely prejudicial." **Id.**

Before addressing the merits of this issue, we must determine whether Davis has preserved it. The Commonwealth argues the issue is waived because Davis objected to evidence of the gas station incident only on the basis of relevance, and not prejudice. Commonwealth's Br. at 10. We disagree.

A review of the record demonstrates that Davis's counsel made the following objections immediately prior to the gas station surveillance video being played:

> [Davis's Counsel]: Your Honor, I am going to object on the basis of relevancy and the basis of Rule 404k [sic], Pennsylvania Rules of Evidence, and, also, I object on the lack of foundation for the surveillance and video unless [the witness] can testify about the equipment.

N.T. at 19. After the court ordered the Commonwealth to lay a foundation, the video was played for the jury.

Although there is no subsection "k" under Pennsylvania Rule of Evidence 404, it is evident that Davis's counsel lodged an objection under Rule 404. That Rule, discussed below, contains a non-exhaustive list of purposes, other than proving character, for which a person's other crimes, wrongs, or acts may be admissible, but "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). The Commonwealth, in fact, recognizes that Davis's counsel's objection "was premised on the surveillance video being evidence of a prior bad act not permissible under Rule 404" and the reference to subsection "k" in the trial transcript was likely a typographical error. Commonwealth's Br. at 10 n.3. We decline to find waiver.

The admissibility of evidence is within the discretion of the trial court. ***Commonwealth v. Saez***, 225 A.3d 169, 177 (Pa.Super. 2019). "An abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised was either manifestly unreasonable or the product of partiality,

prejudice, bias, or ill will." ***Commonwealth v. Rogers***, 250 A.3d 1209, 1215 (Pa. 2021).

Rule 404(b) of the Pennsylvania Rules of Evidence bars admission of evidence of prior bad acts to establish a person's character and to prove that the person acted on a particular occasion in conformity with that character. Pa.R.E. 404(b)(1). However, evidence of prior bad acts is permissible for some other, proper purpose, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). In criminal cases, as previously stated, "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." ***Id.***

The Commonwealth submitted Davis's prior act at the gas station to establish his identity. One of the recognized exceptions to the rule prohibiting evidence of other crimes is where the evidence establishes "the identity of the perpetrator when the crimes are so similar that logically the same person has committed both acts." ***Commonwealth v. Rush***, 646 A.2d 557, 560 (Pa. 1994); ***see*** Pa.R.E. 404(b)(2). To use Rule 404(b)(2) evidence to establish identity, the other crimes and the underlying crime must "share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant." ***Commonwealth v. Weakley***, 972 A.2d 1182, 1189 (Pa.Super. 2009). What is required is "such a high correlation in the details of the crimes that proof that a person committed one of them makes it very unlikely that anyone else committed the others." ***Id.*** (citation omitted).

"To establish similarity, several factors to be considered are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." **Rush**, 646 A.2d at 561.

Here, the trial court found that the introduction of the video to establish identification was more probative than prejudicial. Trial Ct. Op. at 5. It opined that "[t]he introduction of the video was to establish the identity of an individual who had identified himself with the same name as [Davis], had the same tattoo, and similar clothing as the individual who damaged the machines at the campground." **Id.**

We find no abuse of discretion. As noted above, Davis concedes that the Commonwealth's use of the video to prove identity was permissible. As the identity of the perpetrator was a threshold issue in this case, it was highly probative. The two incidents each involved thefts of lottery machines and occurred within two days of each other and near to each other. N.T. at 72. The individual in the gas station video was wearing the same black baseball hat and converse shoes as the individual in the Yogi Bear Campground incident. **Id.** at 71-72, 81. Further, the individual in both videos had the same build, same facial hair, and, most significantly, the same large tattoo on his right hand. **Id.** at 72, 82.

The Commonwealth also emphasized in both its opening and closing statements that the gas station occurrence was not at issue in this case and Davis was not charged in that incident. **Id.** at 8, 139. Rather, it was only introduced for identification purposes. **Id.** Moreover, Davis failed to request a

limiting instruction on this issue. *See* Pa.R.E. 404 cmt. ("When evidence is admitted for this purpose, the party against whom it is offered is entitled, upon request, to a limiting instruction"). We therefore agree with the trial court that the probative value of the evidence outweighed any alleged prejudice.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/11/2023